# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-599

**STATE OF LOUISIANA**

**VERSUS**

**TIMOTHY H. QUEEN**

**-AKA- TIMOTHY HUGH QUEEN**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 6736-09
HONORABLE GUY BRADBERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Candyce G. Perret, Judges.

**CONVICTIONS AND SENTENCES CONDITIONALLY AFFIRMED.**
**CASE REMANDED WITH INSTRUCTIONS.**

**John F. DeRosier**
**14th Judicial District Court**
**District Attorney**
**Carla S. Sigler**
**Elizabeth B. Hollins**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**P. O. Box 2806**
**Monroe, LA 71207-2806**
**(318) 855-6038**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Timothy H. Queen**

**Timothy Hugh Queen**
**Louisiana State Penitentiary**
**Main Prison**
**Angola, LA 70712**
**PRO SE**

**SAUNDERS, Judge.**

On January 15, 2009, Defendant, Timothy H. Queen (hereinafter, "Defendant") was charged by grand jury indictment with one count of armed robbery, a violation of La.R.S. 14:64, one count of armed robbery with a firearm, a violation of La.R.S. 14:64.3, one count of possession of a weapon by a convicted felon, a violation of La.R.S. 14:95.1, and one count of possession of a firearm in a firearm free zone, a violation of La.R.S. 14:95.2. On January 16, 2009, Defendant pled not guilty to the charges. On August 20, 2009, Defendant filed several motions, including a Motion to Substitute Counsel. According to the minutes, the trial court granted Defendant's request to represent himself, in part, and appointed co-counsel. On September 22, 2009, the State severed the charges of possession of a weapon by a convicted felon and possession of a firearm in a firearm-free zone.

At the September 22, 2009 hearing, Defendant withdrew his plea of not guilty and tendered a plea of not guilty and not guilty by reason of insanity. On November 4, 2009, the trial court appointed a sanity commission to determine Defendant's competency to proceed and stayed all proceedings. On April 14, 2010, the trial court found Defendant competent to proceed and relieved the Public Defender's Office from being co-counsel.

On May 21, 2010, upon the State's motion, the trial court amended the indictment to include the names of the victims to counts one and two, to add predicate convictions on count three, and to correct a spelling error in count four. Defendant tendered a plea of not guilty and not guilty by reason of insanity to the amended bill.

On October 17, 2016, the day before trial, the trial court heard a motion in which Defendant requested that he be represented by counsel in entirety. The trial court granted the motion after Defendant stated under oath that he wanted counsel

to represent him. On October 18, 2016, the State reiterated its decision to sever certain charges from the bill and proceed to trial on armed robbery and armed robbery with a firearm. Upon the State's motion, the trial court ordered counts one and two of the bill amended as to the names of the victims. Defendant was re-arraigned on the amended bill and maintained his previous plea of not guilty and not guilty by reason of insanity.

After a trial held October 18, 2016, and October 19, 2016, a unanimous jury found Defendant guilty as charged of armed robbery and armed robbery with a firearm. Subsequently, on December 14, 2016, the trial court denied Defendant's motion for new trial. After Defendant waived the twenty-four hour delay for sentencing, the trial court sentenced Defendant on the armed robbery conviction to seventy-five years in the Department of Corrections to be served without benefit of probation, parole, or suspension of sentence and on the armed robbery with a firearm conviction to five years to be served without benefit of probation, parole, or suspension of sentence. The trial court ordered the armed robbery with a firearm sentence to run consecutively to the sentence imposed for armed robbery. The State also gave notice of its intent to file a habitual offender bill.

On January 3, 2017, Defendant filed a Motion and Order for Appeal, which was granted that same date. Defendant's is now before this court, in brief alleging three assignments of error.

**FACTS:**

On November 19, 2008, Defendant went into Thrifty Way Pharmacy in Lake Charles, Louisiana, armed with a firearm, and demanded the pharmacist give him certain pills. Defendant was apprehended shortly after the robbery and identified by the victims.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there is one potential error patent regarding Defendant's waiver of his right to counsel and an error patent regarding the advisement of the time period for filing post-conviction relief.

The one possible error patent concerns Defendant's waiver of his right to counsel. The record contains multiple minute entries and hearings regarding Defendant's request to represent himself. At most proceedings, Defendant was assisted by co-counsel. Ultimately, Defendant was represented by counsel in full at trial and at sentencing. Because several hearings occurred with Defendant either representing himself or having the assistance of co-counsel, we will address Defendant's waiver of right to counsel.

In conducting an error patent review of the waiver of the right to counsel, this court has examined the adequacy of the waiver. *State v. Montgomery*, 10-1151 (La.App. 3 Cir. 4/6/11) (unpublished opinion), *writ denied*, 11-1742 (La. 5/4/12), 88 So.3d 449, *cert denied*, __U.S. __, 134 S.Ct. 95 (2013). Thus, we will look beyond the court minutes to determine whether a waiver was required and, if necessary, whether the waiver was valid.

In *State v. Dupre*, 500 So.2d 873, 876-78 (La.App. 1 Cir. 1986), *writ denied*, 505 So.2d 55 (La.1987) (footnote omitted), the first circuit discussed a waiver of right to counsel when standby counsel was also appointed:

> The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a person brought to trial must be afforded the right to assistance of counsel before he can be validly convicted and punished by imprisonment. The Sixth Amendment further grants to an accused the right of self-representation. *State v. Carpenter*, 390 So.2d 1296 (La.1980). In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court raised to constitutional level the right of a state criminal defendant to represent himself. Because an accused managing his own defense

3

"relinquishes . . . many of the traditional benefits associated with the right to counsel", he "must 'knowingly and intelligently' forego those relinquished benefits" in order to represent himself. *Faretta*, 95 S.Ct. at 2541.

Although a defendant does not have a constitutional right to be both represented and representative, the district court has the discretion to appoint an attorney to assist a pro se defendant. *See State v. Bodley*, 394 So.2d 584 (La.1981); *State v. Boettcher*, 338 So.2d 1356 (La.1976). When the trial court allows this kind of arrangement the defendant acts as his only legal representative. The legal counsel that is appointed does not represent the defendant; he only advises him. Because the court appointed attorney is only acting as an advisor, the accused is abandoning his right to be represented by counsel. At the same time he is exercising his right to self-representation. Therefore, when an attorney is appointed as an advisor the accused must knowingly abandon his right to be represented by counsel.

In this case, although co-counsel was appointed as an advisor to Dupre, counsel spent a significant portion of the trial representing Dupre. Taylor argued motions, made objections, examined witnesses and assisted in closing arguments. The fact that Taylor partially represented Dupre at trial raises the initial issue of whether Dupre was thereby afforded all the benefits of legal representation and whether this representation abrogated the need for an adequate waiver of counsel.

We hold that it did not. Even though he has an attorney partially representing him, when the accused assumes functions that are at the core of the lawyer's traditional role, as Dupre did, he will often undermine his own defense. Because he has a constitutional right to have his lawyer perform core functions, he must knowingly and intelligently waive that right. *See United States v. Kimmel*, 672 F.2d 720 (9th Cir.1982); *Maynard v. Meachum*, 545 F.2d 273 (1st Cir.1976); *State v. Bell*, 381 So.2d 393 (La.1980). This reasoning is "a logical extension of the well-established rule that a waiver is required despite the presence of a court-appointed advisor." *Kimmel*, 672 F.2d 720, 721, [citing *United States v. Dujanovic*, 486 F.2d 182 (9th Cir.1973) ].

. . . .

In general, if a defendant desires to represent himself, he should be required to waive counsel and proceed on his own. If the trial court wishes to appoint an advisor, a waiver of counsel is still required and problems will be avoided if the advisor is restricted to advising and not allowed to partially conduct the defense.

4

In *State v. Poche*, 05-1042, pp. 8-9 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225, 1231-32, this court explained, in pertinent part:

> In *State v. Hayes*, 95-1170, pp. 4-5 (La.App. 3 Cir. 3/6/96), 670 So.2d 683, 685-86, this court stated:
>
>> Before being allowed to represent himself, a criminal defendant must knowingly and intelligently waive his constitutional right to counsel. *State v. Mitchell*, 580 So.2d 1006 (La.App. 3 Cir.1991), *writ denied*, 613 So.2d 969 (La.1993).
>>
>> A criminal defendant is guaranteed the right to counsel by both the state and federal constitutions. U.S. Const. amend. VI; La. Const. art. I, § 13. Absent a knowing and voluntary waiver of the right to counsel, no person may be imprisoned unless represented by counsel at trial. *State v. Smith*, 479 So.2d 1062 (La.App. 3 Cir.1985), citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).
>>
>> Before a defendant may waive his right to counsel, the trial court must determine whether the defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. *State v. Hegwood*, 345 So.2d 1179 (La.1977). The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *State v. Harper*, 381 So.2d 468 (La.1980). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether a defendant has validly waived his right to counsel. *State v. Carpenter*, 390 So.2d 1296 (La.1980). However, the record must establish that the accused knew what he was doing and that his choice was made "with eyes open." *Id.* at 1298, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
>>
>> The Third Circuit Court of Appeal has repeatedly required the trial court meet the following requirements in determining whether a defendant has validly waived his right to counsel: first, determine a defendant's literacy, competency, understanding and volition, i.e. [,] was defendant's waiver of counsel made voluntarily and intelligently; and second, warn the defendant of the dangers and disadvantages of self-representation, so that

the record establishes that the defendant knew what he was doing. *Mitchell*, 580 So.2d 1006; *Smith*, 479 So.2d 1062; *State v. Adams*, 526 So.2d 867 (La.App. 3 Cir.1988); *State v. Sepulvado*, 549 So.2d 928 (La.App. 3 Cir.1989); and *State v. Bourgeois*, 541 So.2d 926 (La.App. 3 Cir.1989), *writ denied*, 572 So.2d 85 (La.1991).

The correctness of granting a defendant the right to represent himself is judged by the record made in recognizing his right to do so, not by what happens in the course of his self-representation. *State v. Dupre*, 500 So.2d 873 (La.App. 1 Cir.1986), *writ denied*, 505 So.2d 55 (La.1987).

With this jurisprudence in mind, we will determine the adequacy of Defendant's waiver of his right to counsel in the present case. On August 20, 2009, the trial court addressed Defendant's "Motion to Substitute Counsel," which Defendant agreed was actually a request to represent himself. Defendant argued that he was being forced to represent himself because he could not get adequate representation through the Public Defender's Office. Defendant asserted that no attorney in the Public Defender's Office could adequately represent his interests. The trial court then questioned Defendant as to his competency to represent himself. The following colloquy took place between the trial court and Defendant:

Q. Give me your full name. What is your full name.[sic]

A. Timothy Hugh Queen.

Q. And your date of birth, Mr. Queen?

A. October 31st, 1966.

Q. October, 1966?

A. Yes, sir.

Q. So, you're 30 - - 43 years old?

A. 43 this year.

Q. You're 42 now, will be 43 this year?

A. Yes, sir.

6

Q. Okay. What kind of education background do you have, Mr. Queen?

A. I completed my GED in high school. I've got approximately a year in college toward an associate applied science in paralegal study.

Q. Okay. And you've been in a criminal court setting before this time?

A. Yes, sir.

Q. How many times?

A. Several times in Texas.

Q. Have you gone through trials before?

A. Yes, sir.

Q. Have you ever represented yourself?

A. Yes, sir.

Q. In what case?

A. A couple in Texas.

Q. What were they?

A. One was a felony possession case, and the other one was - - it was felony theft.

Q. Okay. What was the result of those verdicts?

A. The theft was dismissed, and the possession was dropped to a Class A misdemeanor, time served.

Q. Did you go to trial on those cases?

A. I went to trial on the theft case; and before we went in there to pick a jury, they dismissed it.

Q. And you were representing yourself, you didn't have - -

A. Yes, sir.

Q. Did you have court-appointed counsel who was assisting you?

A. No.

Q.     Did you conduct any discovery in those proceedings?

A.     Yes, sir.

Q.     What kind of discovery did you conduct?

A.     I just filed basic [sic] motion for discovery and - - you know, typical in a criminal case; and they provided what evidence they had.

Q.     What did you do with that evidence or that information that you got?

A.     Basically - - well, I was originally able to get the theft case reduced from a felony to a misdemeanor; and then when we went to trial on the misdemeanor is when they finally dismissed it because of evidence that I had obtained, you know, concerning the value of the items they claimed were stolen.    And there was also an issue pertaining to the manner that I came across the property and related to the theft charge.

Q.     You've been incarcerated before?

A.     Yes, sir.

Q.     Have you had an opportunity to review the laws of the State of Louisiana?

A.     Yes, sir.

Q.     Are you familiar with the laws as it concerns armed robbery?

A.     Yes, sir.

Q.     In what respect?  How are you familiar with that?

A.     As I understand, sir, the charge of armed robbery carries from 10 to 99 years.

Q.     What are the requirements for the proof of the elements of the crime?

A.     The elements would be that I had intention to deprive an owner of property through threats or with a weapon.

Q.     That's pretty close.   Have you ever appeared in a court proceeding like you are doing today representing yourself?

A.     Yes, sir.  Yes, sir, I have.

Q.     In what case?

A.     I don't have the cause [sic] number off the top of my head, but there's the theft case.  The possession - -

Q.     I thought you told me they dropped it before - -

A.     Yes, sir.

Q.     -- you began?

Did you have an opportunity the [sic] ask anybody any questions?

A.     Not in that case, no, sir; but I did represent myself - - there's one case I did forget about.  It was a civil matter, and it is a recorded decision where I represented myself in Texas and it was concerning the relinquishment of my parental rights in an adoption.  And I did - - I did question witnesses in that case.  The matter, though, once the case was - - proceeded to trial, I was actually represented by counsel from - - what they call state counsel for the offenders over in Texas that's supplied by the prison system; and I participated as co-counsel there and questioned witnesses.  And the case eventually went to the Ninth Circuit in Beaumont and I was granted full relief.  The adoption was overturned and my parental rights restored.

Q.     Have you gotten from Mr. Alexander information about your arrest and how the incident was reported and those kinds of things?

A.     He filed discovery motions, yes, sir; and we obtained discovery.  And I don't think it's full discovery.  I don't think the state has disclosed everything that they had; but, yes, we do - - we've obtained evidence.

Q.     You've looked at it?

A.     Yes, sir.

Q.     Is everything that you're charged with come out of one event?

A.     Yes, sir.

**THE COURT:**

I will note for the record that you have in the past written a couple of letters to the court concerning maybe a writ of habeas that you asked for.

**DEFENDANT QUEEN:**

Yes, sir.  That wasn't really intended for this court; but this is where it ended up.

9

**THE COURT:**

- - and you also wrote another letter to me - -

**DEFENDANT QUEEN:**

For the indictment and information.

**THE COURT:**

- - asking for copies of indictments or maybe the bill of information.

**DEFENDANT QUEEN:**

Yes, sir; and also, I believe, I wrote you earlier this year pertaining to not having seen any counsel for my first three or four months here.

**THE COURT:**

You wrote to me March the 2nd of '09. It was filed in the record on March the 20th.

All right. I'm going to grant your request in part. I'm going to allow you to represent yourself, together with Mr. Alexander. He will serve as your co-counsel, and y'all can decide your trial strategies as you go along. You seem intelligent enough and able to make your point. So, I think you've had sufficient experience and are familiar, in some respects, but not totally familiar with all of the laws of State of the Louisiana [sic]; but you, I think, you can adequately represent yourself; so, I'm going to grant your wish.

**DEFENDANT QUEEN:**

Thank you.

**THE COURT:**

And appoint you as co-counsel with court-appointed counsel, the public defenders office.

Although the trial court did not specifically advise Defendant of the dangers and disadvantages of proceeding to trial without counsel, considering the record as a whole, as this court did in *Poche*, the trial court was aware that Defendant was "literate, competent, and understood the charges against him and the judicial process." *Poche*, 924 So.2d at 1233. Furthermore, Defendant was well aware of the judicial process and was assisted by co-counsel at numerous proceedings. Thus, the record as a whole supports a finding that Defendant adequately waived his right to counsel during pre-trial proceedings.

We note that after the August 20, 2009 waiver, the subject of Defendant's representation was revisited many times, most of which were brought about by Defendant's request to change his co-counsel and Defendant's request to have *Peart* hearings regarding the adequacy of funding available to the Public Defender's Office.

When Defendant was found competent to proceed on April 14, 2010, the trial court granted the Public Defender's Office's "Motion to Be Relieved as Counsel of Record" because Defendant had filed suit against the Public Defender's Office. Defendant asked the court to clarify that he was proceeding without the assistance of co-counsel. At the next hearing held May 21, 2010, Defendant did not have the assistance of co-counsel. At that proceeding, the trial court again dealt with the issue of Defendant's access to legal resources, which was reset for July 21, 2010. The trial court also denied Defendant's claim that his protection against double jeopardy was being violated by being charged with both armed robbery and armed robbery with a firearm. Additionally, the trial court denied Defendant's motion to quash based on lack of discovery and denied a motion for preliminary examination.

At the May 21, 2010 proceeding, Defendant also filed a motion concerning conflict of interest of co-counsel, which the trial court denied since Defendant was representing himself. Defendant argued that he had a right to build a record as to why he was representing himself, but the trial court denied Defendant's request. At that same proceeding, the State amended the bill to change the victims and to add a predicate offense to the charge of possession of a firearm by a convicted felon. Defendant re-entered his same plea of not guilty and not guilty by reason of insanity.

The cover page of a hearing held July 21, 2010, indicates Defendant again had co-counsel, but nothing in the transcript of the hearing indicates co-counsel participated. On August 25, 2010, the trial court heard Defendant's motion to vacate the order relieving the Public Defender's Office. The State informed the trial court that it believed Defendant needed to be represented and that an attorney not associated with the Public Defender's Office should be appointed to represent Defendant. Noting that Defendant was a named plaintiff in a class action lawsuit against the Public Defender's Office, the trial court refused to vacate its earlier order relieving the Public Defender's Office from representing Defendant. Instead, the trial court appointed Eugene Bouquet, an independent contractor with the Public Defender's Office, to represent Defendant. When Defendant asked the trial court if Mr. Bouquet was representing him in full or as co-counsel, the trial court responded:

THE COURT:

> I'm going to leave you as co-counsel, if you want to be. If you don't want to be, then stop talking and stop filing papers. If you want to be co-counsel, then you can continue to do stuff. Okay? But it has to be signed by you and Mr. Bouquet, co- counsel - -

Defendant informed the trial court that it was never his intention to represent himself and that he did so only because of the lack of competent counsel. The trial court proceeded with Defendant's Motion to Recuse the District Attorney, apparently without Mr. Bouquet. After Defendant questioned a witness, the trial court denied the motion to recuse.

At a hearing held May 11, 2011, Defendant was assisted by co-counsel Eugene Bouquet. The trial court denied a motion to recuse the trial judge filed by Defendant. The trial court decided that after the doctors reported on Defendant's insanity at the time of the offense, it would decide whether Defendant should represent himself in the entirety or have co-counsel. At a hearing held August 17, 2011, the trial court heard a bond reduction hearing with the presence of co-counsel. A motion for the appointment of ad hoc counsel was denied because Defendant had been allowed to represent himself. At that same proceeding, the trial court heard a *Peart* motion filed by Defendant, which was held in abeyance until other witnesses could be called.

At a hearing held October 31, 2012, James Dixon of the Public Defender's Office summarized Defendant's attorney situation as follows:

> MR. DIXON: James Dixon, Your Honor, from the Public Defender's Office. Your Honor, I have been subpoenaed in the matter of State V. Timothy Queen, Case No. 6736-09.
>
> Your Honor, I have requested - - I submitted a handwritten motion to quash the subpoena. The basis for Mr. Queen's motion is essentially this: Initially, he was appointed Eugene Bouquet to represent him from the Public Defender's Office. And as you recall, he filed various motions stating that Mr. Bouquet was overworked, had too many cases. He had about 150 cases.
>
> When we hired Donald Sauviac, we thought, "Well, we can remedy that situation." We transferred the case to Mr. Sauviac, who had fewer than 50 cases. And when Mr. Sauviac left and his cases were transferred to Mike McHale, that case went to Mike McHale. Mr. McHale also has fewer than 50 cases. So Mr. Queen got exactly what he wanted for [sic], an attorney with fewer cases.

He has now filed a motion asking that Mr. Bouquet be reappointed and has subpoenaed me to testify in that hearing. My point is this: At this point, it would seem that Mr. Bouquet - - excuse me - - Mr. Queen is simply abusing the process.

The trial court denied Defendant's motion to have Mike McHale dismissed from the case and Eugene Bouquet reappointed. When Mr. McHale asked the trial judge to clarify his role in representing Defendant, the trial judge responded:

THE COURT: You would be considered, I guess, lead counsel.

MR. MCHALE: All right.

THE COURT: I'm not sure how else to describe it. I have given Mr. Queen the opportunity to in part represent himself. And Mr. Kimball has explained to him that one of his defenses doesn't make a whole lot of sense, that he believes himself capable enough to represent himself, yet he wants to claim insanity at the time and the commission of the offense as a defense. And that probably is not going to bode well with the jury, but that's his business.

MR. MCHALE: Yes, sir.

THE COURT: Okay? So any motions that he files on his own, you may give him some advice, but he is on his own on those motions. Any motions that you file on your own - -

MR. MCHALE: Yes, sir.

THE COURT: - - you control the motions that you file, and he controls the motions that he files. And he's not having very much luck with his motions.

The next hearing transcript in the record, September 27, 2013, indicates Mr. King Alexander was back as counsel for Defendant. In the body of the transcript, however, it appears Mr. McHale terminated his contract with the Public Defender's Office; thus, all of his files were being assigned to Mr. Shelton. Mr. Shelton assisted Defendant at another proceeding held January 15, 2014, at which Defendant filed a motion to substitute counsel. According to the trial judge's summary of the motion, Defendant was seeking to substitute another counsel

14

because Mr. Shelton had not helped him and had not prepared. The trial court denied the motion to substitute.

Mr. Shelton assisted Defendant at a hearing on a motion to recuse the trial judge held June 27, 2014. At a subsequent proceeding held October 6, 2014, Defendant appeared without the assistance of co-counsel on a motion to declare La.Code Crim.P. art. 782(a) and La.Const. Article I, § 17 unconstitutional. The trial court denied the motion. On November 25, 2014, Defendant appeared with Mr. Shelton, again filing a motion to substitute counsel. Defendant alleged that Mr. Shelton had a conflict of interest between some of his clients and Defendant. The trial court denied the motion to substitute counsel. The following colloquy took place as to Defendant's assistance from Mr. Shelton:

MR. SHELTON:

Mr. Queen actually desires to represent himself. I'm actually as counsel - -

MR. QUEEN:

No, that isn't what I desire.

MR. SHELTON:

Let me talk.

MR. QUEEN:

Go ahead.

MR. SHELTON:

As counsel, I'm in a precarious situation. He doesn't take my advice. He does exactly what he wants to do. Now, we've exhausted just about all of his motions. We presently have - - and I'm primarily concerned about the pending charges. We still haven't gotten to that. But we have it scheduled for February 23rd.

15

THE COURT:

Okay.

MR. SHELTON:

To me it's time to move on.

THE COURT:

I'm not letting you move on.

MR. QUEEN:

Your Honor, I'd like to clarify something pertaining to what Mr. Shelton said about the - - he said - - I've never waived my right to counsel in this case.

THE COURT:

I understand. I'm letting you assist in representing yourself.

MR. QUEEN:

Right.

THE COURT:

I've told you on numerous occasions that you have, I think, changed your plea to not guilty by reason of insanity, right?

. . . .

MR. QUEEN:

I'm merely concerned with getting adequate counsel, and I haven't been able to consult with Mr. Shelton. I haven't been able to consult with him prior to the hearing today. I'm on my own as far as Mr. Shelton hasn't done anything. I asked him to go inspect this evidence for DNA - -

At a hearing held April 29, 2015, a new judge on the case denied Defendant's motion to substitute counsel. Mr. Shelton was present at the proceeding. On June 10, 2015, Defendant appeared with Mr. Shelton for a hearing, at which Defendant stated he wanted Mr. Shelton off of his case. On

16

August 5, 2015, Defendant appeared with Mr. Shelton regarding the motion to substitute Mr. Shelton. Defendant complained about Mr. Shelton's diligence. During the State's questioning of Defendant regarding the motion to substitute, the State played an audio recorded jail telephone conversation between Defendant and his dad on March 6, 2015. After the recording was played, the following colloquy took place between Defendant and the State:

MR. KIMBALL:

Okay, now that conversation was March 6, 2015. (To Mr. Queen) You remember that now?

MR. QUEEN:

I had - - remember the conversation; yes.

MR. KIMBALL:

And you told your dad, and I wrote it down, I kind of changed language little bit: "If you hire a lawyer it will mess up everything I am trying to do." Now do you remember making that statement to your dad, now?

MR. QUEEN:

Yes, sir.

MR. KIMBALL:

Okay, now. Let's go back a little history of this case, here. You first had Mr. King Alexander, and back in August, 2009, we had a motion to substitute counsel because you weren't happy with King Alexander's representation of you, is - - You remember that?

MR. QUEEN:

Yes, sir.

MR. KIMBALL:

You did the same with Eugene Bouquet. You did the same with Mike McHale. And now, you're doing it to Robert Shelton.

MR. QUEEN:

Yes, sir.

MR. KIMBALL:

Okay, so you have not - - These are four attorneys who are well respected in this community and do bang-up jobs for their clients; all of them except for you, Timothy Queen.

MR. QUEEN:

Uh-huh (affirmative).

MR. KIMBALL:

You're the only one that's dissatisfied with them. But, as we heard on that there, you have a plan, and that is part of your plan.

Mr. Alexander had to get off your case because you filed a suit against the local public defender's office and the state public defender's office; is that correct?

MR. QUEEN:

No, sir. The suit had been filed for some years.

MR. KIMBALL:

Well, you don't know that. But that's the reason you had to get off. You had filed a substitute counsel on him, everybody there.

Your plan is: No matter who we get - - If we got whomever from this state, one of the most well-recognized attorneys in - - in the country here, you'd be filing a motion to substitute - -

MR. QUEEN:

No, if he did his job.

MR. KIMBALL:

- - because he's court appointed. Now, do you remember your dad saying, "Let me hire a lawyer for you"?

MR. QUEEN:

I heard him say it; yes.

MR. KIMBALL:

And you said no; it's gonna mess up what you're doing. Because you're setting up, what, an appeal because of the public defender system in this parish and this state.

18

MR. QUEEN:

It's well-documented.

MR. KIMBALL:

And you've been doing that since you've been charged with this, right?

MR. QUEEN:

I'm entitled to - -

MR. KIMBALL:

We've had - -

MR. QUEEN:

- - effective assistance of counsel - -

MR. KIMBALL:

Let's see how many Peart hearings we've have [sic]. Let's see. And this is - - I might have missed some, because we've had so many of them. Here's one from August 17, 2011, October 21, 2011 - -

MR. QUEEN:

That was all part of the same hearing.

MR. KIMBALL:

Yes, And then, you've re-urged it this last year and a half when - - with Mr. Shelton. So - -

MR. QUEEN:

Yes.

MR. KIMBALL:

- - no matter who gets appointed to represent you, you're gonna - -you're gonna continue this, and continue to file these motions, and then take writs to the Third Circuit when it's denied, right?

MR. QUEEN:

If it's a public defender and he's not doin' [sic] his job; yes, sir. I will.

19

MR. KIMBALL:

It sounds, from this discussion with your dad, that you don't need a public defender. That through your dad, you have the means to hire your own attorney.

MR. QUEEN:

My - - My family isn't obligated to hire a - - I'm indigent, and I'm entitled to counsel.

MR. KIMBALL:

I understand that, but you're dad - -

MR. QUEEN:

I'm not gonna burden my family - -

MR. KIMBALL:

Can I finish the question?

MR. QUEEN:

- - to spend $25,000, which these attorneys want here to take my case, when I'm entitled to a public defender, because I am indigent.

. . . .

MR. KIMBALL:

But, the bottom line is: Your dad is more than willing and able to hire an attorney to - - to - - so you can get to trial. But you don't want that, because then you lose your public defender Peart hearing - -

MR. QUEEN:

Strategy.

MR. KIMBALL:

- - strategy that you've been doing since you were arrested.

MR. QUEEN:

I - - It's - - It's a problem with the public defender system, and it needs to be fixed. If I got a counsel that's burdened by an excessive caseload and inadequate support services, he's not doing his job, he's

20

not bein' [sic] diligent in doin' [sic] what he's supposed to on my case; then, yes, I got a problem.

MR. KIMBALL:

Okay. And so, Dad's offered to relieve you of that problem, and you don't want that to happen, right?

. . . .

MR. QUEEN:

I'm assertin' [sic] my Sixth Amendment right to effective assistance of counsel, and I'm indigent. I'm entitled to effective assistance at public expense.

MR. KIMBALL:

Well, that's - - that's all nice for you to say. But here's the question: No matter who gets appointed to represent you, you're gonna attack them the same way that you've done Mr. Shelton, Mr. Alexander, Mr. Bouquet, and Mr. McHale, right?

MR. QUEEN:

If they're burdened by the system; yes, sir. I will.

The trial court denied Defendant's motion to substitute counsel.

On October 28, 2015, Defendant appeared for another hearing with the assistance of Mr. Shelton.[1] At the hearing, the State notified the court of a plea offer it had extended to Defendant, which Defendant rejected. The court also heard argument as to a *Peart* motion filed by Defendant. The State argued that a *Peart* motion was not appropriate in "hybrid representation situation." After hearing testimony concerning the *Peart* motion, the trial court found that all *Peart* criteria had been met. The trial court also denied Defendant's motion to substitute counsel for Mr. Shelton. Mr. Shelton filed a motion for speedy trial on behalf of Defendant. Defendant objected to counsel's filing of the motion for speedy trial.

---

[1]At this proceeding, Defendant waived his right to counsel in a separate docket number (8053-15), in which Defendant was charged with introducing contraband into a jail. The trial court questioned Defendant as to the voluntariness of the waiver and accepted Defendant's waiver of his right to counsel. Defendant subsequently entered a guilty plea to that charge.

21

On September 9, 2016, a hearing was held as to several motions filed by Defendant – a motion to quash, a motion for expiration of the time period for bringing Defendant to trial, and a "Motion for the Court to Rescind its Order of August 20, 2009." At the hearing, Defendant explained that the court of appeal issued a ruling stating that his co-counsel status prevented him from raising a *Peart* issue.[2] Thus, Defendant asked the trial court to have his co-counsel status removed:

> So, I'm asking the Court to rescind its order for me to be co-counsel on the case and just let Robert Shelton straight up represent me, and - - then - - that way I can come back with a Peart and - - from - - refile the Peart motion, and we can - - There's no need to have another hearing, because we already got a transcript of that hearing, if the State will stipulate it, and I'll take it back up on a writ with that - - without having to be a co-counsel on the case, and so - -

The State objected to Defendant's motion to rescind the trial court's prior order granting Defendant co-counsel status, arguing that Defendant was simply trying to delay the case and set up an ineffective assistance of counsel claim. The trial court denied Defendant's request and ordered the trial to proceed consistent with the prior order.

At a hearing held October 17, 2016, Defendant reasserted that he wanted Mr. Shelton to represent him at trial. Defendant stated the following:

> MR. QUEEN: Yes, sir. The Court heard a request to rescind my status as cocounsel and decided that I should remain cocounsel on September 9th. If the prosecutor is asking the Court merely to clarify your ruling on that motion, then I have no problem. But if the prosecutor is urging the Court to change its ruling, then I think it raises an issue.
>
> On October 28th, 2015, the Court denied me the opportunity to present most of my witnesses I subpoenaed for a Peart motion, and I took up a writ on that matter.

---

[2]In *State v. Queen*, 15-1163 (La.App. 3 Cir. 2/23/16) (unpublished opinion), this court noted that Defendant's representation was a "hybrid representation," and thus, he was not entitled to relief under *State v. Peart*, 621 So.2d 780 (La.1993).

The Court of Appeals found my status as cocounsel presented an obstacle to me raising a Peart claim. In response to that judgment, I filed a motion to rescind the order designating me cocounsel so I could assert the Peart claim.

On September 9th, the prosecutor opposed my motion to rescined, arguing I should remain on this case as cocounsel. And the Court argued - - agreed and denied the motion.

I gave notice of intent to seek writs on that, and the Court ordered the transcript to be delivered to me by October 10th, which was Columbus Day, and set a return date of October 11th. By letter of October 2nd, I wrote the Court to request a transcript by October 7th because of the holiday on October 10th.

Additionally, my father, the Sheriff's Office, and possibly even Mr. Shelton tried to reach the Court regarding the transcript, which was to no avail apparently because I still don't have the transcript which has prevented me from filing a writ in proper form on the [co-counsel] issue.

It now appears the prosecutor wants to re-litigate the issue to assert a position opposite to the one asserted on September 9th. So other than an obstacle to a Peart claim, cocounsel presents no issue.

I cannot be compelled to exercise my cocounsel status at trial and in fact will not participate at such trial. I'll leave that job to Mr. Shelton.

As I previously have expressed, my exercise of cocounsel has been to gain competent counsel by addressing systemic deficiencies in the Public Defender Office and the system in the pretrial stage. Trial is the domain of my cocounsel, Mr[.] Shelton.

Further, the doctrine of res judicata requires an issue decided between the parties by this Court cannot be re-litigated. If the State wishes to have the issue reviewed, it should join me in my request to be immediately provided the transcript of September 9th as well as this hearing and for the Court to set a new return date so we can address the cocounsel issue.

I'm aware that most instances, matter involving the exercise of judicial discretion such as ruling on issues do not implicate the Court's impartiality. But if the Court were to entertain the State's request to re-litigate this issue on cocounsel and then rule in the State's favor, it would seriously undermine the Court's appearance of impartiality and give basis for a claim of judicial bias and show the Court is leaning in favor of the prosecution. And that's what I have, Your Honor.

23

After the State responded that it needed clarification as to who he wanted to represent him at trial, the trial court responded:

> THE COURT:     Let the record reflect the same. Mr. Queen did answer the question on the record, under oath that Mr. Shelton would be representing him.
>
> Issue No. 2, State.
>
> . . . .
>
> MS. SIGLER:     Just for final clarification, my understanding is that Mr. Queen has asked to be relieved from cocounsel status on the trial, and the State obviously has no issue with that. That is Mr. Queen's right to do if that is what - -
>
> THE COURT:     That is implied in his response to the Court.
>
> MS. SIGLER:     Okay.
>
> THE COURT:     Next issue.

Before the start of trial the following day, October 18, 2016, the State notified the trial court that Defendant had filed another *Peart* motion. The State asserted that the filing of the motion was nothing more than a delay tactic and was "purely manipulative in nature." Defendant's counsel had no objection to the motion being denied, and the trial court denied the motion. Defendant was represented by counsel at all subsequent proceedings, including voir dire, jury trial, a motion for new trial hearing, and sentencing.

It is clear from the foregoing discussion that Defendant was well aware of the judicial process and that his decision to represent himself was part of a strategy. Thus, the record contains an adequate waiver of Defendant's right to counsel. We do note, however, the following error patent regarding the advisement of the time period for filing post-conviction relief.

The trial court advised Defendant that he has "two years from the date of the signing of this judgment to - - to perfect and/or explore post-conviction relief."

24

Louisiana Code of Criminal Procedure Article 930.8 provides the defendant has two years *after the conviction and sentence become final* to seek post-conviction relief. Thus, the trial court incorrectly informed Defendant of the time period for filing post-conviction relief. Accordingly, the trial court is directed to inform the Defendant of the correct prescriptive period of article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## ASSIGNMENT OF ERROR NUMBER ONE:

In this assignment of error, Defendant complains of the trial court's denial of three defense challenges for cause of prospective jurors. Because all twelve peremptory challenges were exercised by Defendant, he contends this court must presume prejudice. He claims the juror's responses showed they could not be fair and impartial. The State contends that this issue was not preserved for appellate review due to the defense's failure to object to each denial of a challenge for cause. In *State v. Law*, 12-1024, pp. 6-7 (La.App. 3 Cir. 4/3/13), 110 So.3d 1271, 1276, *writ denied*, 13-978 (La. 11/22/13), 126 So.3d 475, addressing this argument, this court stated:

> Further, as the State points out, the record contains no objections by Defendant to any denials of challenges for cause. Louisiana Code of Criminal Procedure Article 800(A) states, "A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection." Further, after denying Defendant's Motion for Change of Venue, the court asked Defendant's trial counsel whether there were "any other objections to the jury selection process." Counsel replied, "That's it, Your Honor." However, the *Pinion* court stated:

25

> Although the court of appeal faulted counsel for not making a general objection on the record to the composition of the jury, an objection that counsel had been forced to accept an obnoxious juror as the result of the trial court's erroneous ruling on one or more cause challenges has not been an aspect of the Court's jurisprudence for preserving error in the denial of cause challenges for over 50 years since *State v. Breedlove*, 199 La. 965, 7 So.2d 221 (1942) was legislatively super[s]eded in the 1966 revisions to the Code of Criminal Procedure. *See State v. Robertson*, 92-2660 (La.1/14/94), 630 So.2d 1278, 1279-80. *In jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause*. La.C.Cr.P. art. 841 ("It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take . . . and the grounds therefor.").

*Id*. at 136 (emphasis in original).

Although *Pinion* did not discuss La.Code Crim.P. art 800, this passage negates the application of that article.

Thus, defense counsel's failure to object to the denial of the challenges for cause does not prohibit this court from considering this issue on appeal. Peremptory challenges were used after the challenges for cause were denied as to prospective jurors Chelette and Benoit. As for prospective juror Worthington, who served on the jury, defense counsel attempted to exercise a peremptory challenge after the challenge for cause was denied, but he could not do so as all had been exhausted. We will first discuss the pertinent caselaw concerning challenges for cause and will then address each challenge separately.

In *State v. Hamilton*, 16-587, pp. 6-7 (La.App. 3 Cir. 4/5/17), 216 So.3d 367, 373-74, this court stated:

> In a third circuit case with a defendant of the same last name, *State v. Hamilton*, 12-204, pp. 4-5 (La.App. 3 Cir. 11/20/13), 127 So.3d 76, 79-80, *writ denied*, 13-2925 (La. 5/30/14), 140 So.3d 1173,

this court discussed issues of a trial court's denial of challenges for cause, as follows:

> A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the entire voir dire reveals the trial judge abused its discretion. . . .
>
> "A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." However, a trial court does not abuse its discretion when it refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. Thus, to establish reversible error warranting reversal of a conviction and sentence, defendant must demonstrate "(1) erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges." In the instant case, it is undisputed that defense counsel exhausted his peremptory challenges, and, therefore, need only show that the trial court abused its discretion by denying a challenge for cause.

*State v. Odenbaugh*, 10-268, pp. 23-25 (La. 12/6/11), 82 So.3d 215, 236-37, *cert. denied*, 568 U.S. 829, 133 S.Ct. 410, 184 L.Ed.2d 51 (2012) (citations omitted).

According to La.Code Crim.P. art. 797, the State or Defendant may challenge a prospective juror for cause on the ground that:

> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
>
> (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
>
> (4) The juror will not accept the law as given to him by the court.

27

In *Odenbaugh*, 82 So.3d at 238 (citations omitted), the supreme court further stated:

> [W]hile cognizant of the broad discretion afforded a district court when ruling on cause challenges, this Court has cautioned that a prospective juror's responses cannot be considered in isolation and that a challenge should be granted, "even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably [inferred]."

## CANDACE CHELETTE

Defendant claims there were three reasons Ms. Chelette should have been excused. First, she was preoccupied about her inability to find a pharmacist to cover for her at work. The second reason was her desire to know if the jurors would be told the reason why Defendant did not testify should he make that decision. Finally, there was a possibility that she would identify with the victim, also a pharmacist.

These three issues were all addressed during voir dire, but the only ground that was raised when challenging Ms. Chelette for cause was that Ms. Chelette was a pharmacist and "she's not gonna like to hear this case." Accordingly, this is thee only ground we will consider on appeal. *See State v. Sarpy*, 10-700 (La.App. 3 Cir. 12/8/10), 52 So.3d 1032, *writ denied*, 11-46 (La. 6/3/11), 63 So.3d 1006; *State v. Washington*, 15-819 (La.App. 4 Cir. 2/17/16), 187 So.3d 71, *writ denied*, 16-488 (La. 3/31/17), 217 So.3d 358. After the defense raised the foregoing challenge for cause, the State pointed out to the court that there had been no mention that a pharmacist was involved in the case and that Ms. Chelette had not been questioned regarding bias that may be present due to the fact she is a pharmacist. The challenge for cause was denied. On appeal, Defendant's argument is that Ms.

28

Chelette would probably have found it difficult to put herself "in the shoes of this victim."

The fact that Ms. Chelette may have been sympathetic to the victim in this case as they share the same occupation is nothing more than conjecture. As such, we find that the trial court did not abuse its discretion in denying the challenge for cause as to Ms. Chelette.

## DARIN WORTHINGTON

Defendant contends the challenge for cause of Mr. Worthington, a youth minister, should have been granted due to distractions causing his inability to concentrate. Defendant contends that Mr. Worthington could not provide the level of attention required to provide a fair trial.

During voir dire questioning, Mr. Worthington stated that in addition to overseeing 400 youth at church on Wednesdays nights, he runs the Trinity Center, a recreational facility. Additionally, he said he would be speaking at a Rotary meeting the following day. During further questioning, Mr. Worthington said that other people assist him on Wednesday nights, and it would be possible for someone else to fill in. Although he said he has staff to handle things at the Trinity Center, he explained that when he is there, he is able to make sure nothing "terrible" is happening. Mr. Worthington was asked if during a two day trial he would be able to concentrate on what was being said from the witness stand and to reach a fair and impartial verdict, he replied, "It'd be challenging. I'll be honest." However, Mr. Worthington then said if he was "gonna sit in the chair," he was going to turn off his phone "[a]nd it is what it is." When asked if he would be able to pay attention, he responded affirmatively.

Later, defense counsel asked Mr. Worthington if he had a couple of days to allot to the trial, and he replied, "Honestly, no." He then explained that he was

working on a hunting and fishing expo and had a lot of details he had not yet dealt with. However, he said, "You do what you gotta do."

Defense counsel, questioning Mr. Worthington's ability to concentrate on the proceedings, raised a challenge for cause. The State pointed out that Mr. Worthington had ensured that he would turn off his phone and concentrate on the proceedings. Additionally, the State noted that although it would be an inconvenience for every juror, unless retired, it seemed that Mr. Worthington made clear that if on the jury, he would concentrate on what was "coming from the witness stand." The challenge for cause was denied.

Given the above, we find that the trial court did not abuse its discretion in denying the challenge for cause of Mr. Worthington because although he admitted it would be challenging, he indicated he would be able to pay attention to the proceedings.

## PETER BENOIT

Defendant claims Mr. Benoit was incapable of being fair and giving Defendant the presumption of innocence required by law. During voir dire questioning, Mr. Benoit informed the prosecutor that his sister, brother-in-law, and their child were murdered in 1978 and someone was convicted for the crime. When questioned by defense counsel, Mr. Benoit said he did not think justice was served regarding the murders of his family members.

Although the Defendant's presumption of innocence was discussed at length with Mr. Benoit, this was not the ground for the challenge for cause raised by the defense. The ground for the challenge for cause was discussed in the following exchange:

MR. JOHNSON:

Your Honor, when - - when I did question him on this, he did say that he would attempt to give all of his attention to the evidence adduced at trial. I do understand Mr. Shelton's position. It seemed to me, when I questioned him, that he was clear.

On Mr. Shelton's questioning, it seemed clear to me that he felt that justice was not served in his family's case. I don't know anything about that, and I don't think there was any evidence that suggests that he would apply any harshness from that to this defendant.

So we would object to the challenge for cause on those grounds.

THE COURT:

Mr. Shelton, specific reasons for our challenge.

MR. SHELTON:

I was concerned, as it related to his confidence - - confidence in the justice system. That - - that concerns me. Because he - - he actually expressed he still was in concern [sic] with the results of what had gone on prior to today in his life.

In *State v. Robinson*, 08-652, p. 13 (La.App. 4 Cir. 5/13/09), 11 So.3d 613, 621, *writ denied*, 09-1437 (La. 2/26/10), 28 So.3d 269, the fourth circuit, finding no error in the trial court's denial of a challenge for cause of prospective juror Mielke, stated:

In the instant case, the prospective jurors were asked by the state during *voir dire* whether any of them had a family member or friend who had been a victim of a crime of violence. Prospective juror Mielke responded:

Well, my son was robbed and pistol-whipped about four years ago, my younger daughter was attempted car-jacked about two years before that, and my oldest daughter was raped at nine o'clock in the morning. I don't know if I could be impartial.

During the jury challenge process counsel for Robinson sought to challenge Mielke for cause, on the stated ground that "[s]he stated that she couldn't be impartial under any circumstances." A prosecutor countered that he did not think Mielke said she wouldn't be impartial. Counsel for Robinson said that was what he had put down as what she answered to him. We note that defense counsel never asked Mielke any questions at all; she was simply responding to a question by the state's counsel.

31

Mielke only stated that she did not know if she could be impartial and did not affirmatively state she could not be. We do not find that Mielke's responses as a whole revealed facts from which bias, prejudice, or an inability to render judgment according to law might be reasonably implied. Moreover, the ground stated by defense counsel for the challenge for cause, Mielke stated that she could not be impartial under any circumstances, was incorrect. Therefore, we do not find that the trial court abused its discretion in denying Robinson's challenge for cause as to Mielke.

Although not directly on point with *Robinson*, there was no indication that Mr. Benoit's opinion that justice was not served regarding the murders of his family members would affect his ability to be fair and impartial. Accordingly, we find that the trial court did not abuse its discretion in denying this challenge for cause.

## ASSIGNMENT OF ERROR NUMBER TWO:

In this assignment of error, Defendant contends he was deprived of his right to present a defense as guaranteed by the United States Constitution, Sixth Amendment, and La.Const. Art. 1, § 3. We find no merit to this assignment.

Before jury selection, the State asked defense counsel if there was going to be an alibi defense. Defense counsel responded that the alibi would be involuntary intoxication. Later, the State asserted its objection to Defendant being able to present an alibi or an intoxication defense:

MR. MURRAY:

Judge, to our knowledge, we were never given a pleaded complaint of alibi or intoxication defense prior to, or - - or even as of today, Your Honor, as - - and that's in accordance with the code - - Code of Criminal Procedure, Article 726.

And just looking at a couple of cases, here, that we're going to cite to; one being State versus Trahan. This is - - Louisiana Supreme Court, decided in 1990. It's gonna be 576 So.2d 1.

In this case, the Supreme Court, in - - in talking about the Trial Court reaching the correct result and excluding some evidence, they

32

go on to speak about Code of Criminal Procedure, Article 726, and - - which is notice of defense based upon mental condition.

And it says in Part A, "If defendant intends to introduce testimony relating to a mental disease, defect, or other condition, bearing upon the issue of whether he had the mental state required for the offense charged; he shall not, later than 10 days prior to trial, or such reasonable time as the Court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The Court may, for cause shown, allow late filing of the notice and grant additional time."

In Part B, which reads, "If there is a failure to give notice, as required by Subsection A of this article, the Court may exclude the testimony of any witness offered by the defendant on the issue of mental condition."

Now, Judge, normally when we think in - - in our verbiage of mental condition, we think of somebody, maybe a bipolar disorder, or something like that. However, the Supreme Court, in Trahan, goes on to explain, even further, that - - it says very specifically, "Intoxication is an other [sic] condition bearing on the issue of whether the defendant had the mental state for the offense charged."

And in that, the Supreme Court, during that time, was quoting the Louisiana 1st Circuit in State v. Quinn, 479 So. 2d 592 and 596. And it goes on to say, Judge, "The purpose of Article 726, and the other discovery rules, and the Code of Criminal Procedure, is to," quote, "eliminate unwarranted prejudice which could arise from surprise testimony."

Judge, we believe that this would prejudice us in not allowing, you know - - If we'd of known about this, this would've been something that we could've gotten an expert to do - - to - - to look over some blood tests, or something done. We don't even have that kind of evidence to look at, Judge. There was nothing ever raised prior to now regarding an involuntary intoxication.

So I think there would be great prejudice to the State to allow something like this in this 11th hour to come in; never mind, Judge, 11th hour of 8 years after the original incident happened for which we are at trial for today.

For the defendant, now, to maybe even possibly claim that he does have just cause to seek an extension of time from the Court, I think, would be essentially preposterous, based on this ongoing for 8 years' worth of filings for which the defendant has delayed this finally getting to trial, Judge, and us seeking justice in this matter.

Accordingly, because we've been given no notice of an alibi, or of intoxication, they are required, as per the Code of Civil - - Criminal

33

procedure, we're going to ask that Your Honor not allow witnesses, or testimony, or evidence, concerning either alibi or intoxication defense. Thank you.

Defense counsel responded to the State's objection as follows:

MR. SHELTON:

Under the present circumstances, Your Honor, in Mr. Queen's behalf, respectfully to the Court, and to the State of Louisiana, there is a situation here, as we see it, where the position of Mr. Queen states that he may have involuntarily been subjective [sic] to a substance, in some form, that affected his mental capacity to determine the difference between right and wrong.

While it's not a mental condition, as Mr. Queen places it, but for the record, and for the Court, he was under a mind altering substance. I don't foresee that Mr. Queen will testify, unless he changes his mind.

But out of the interest of justice, it is our position that Mr. Queen should have the opportunity, in the interest of justice, to argue any and all points that he considers, even if he files the requisite motion at some other time.

That will be a consideration for the Court, of course. Because, in fact, it is in the Court's discretion, even after this length of time. But he does have a substantive defense here, and I think it's very important for his position. Thank you.

Prior to the start of trial, the trial court denied Defendant's request to present

intoxication as a defense:

It should be noted that a voluntary intoxication defense was being asserted yesterday; that was the date of trial. And that it was suggested that the defendant intended to use as a defense - - as an alibi, or intoxication defense, that he may have been under the influence of mind altering substances.

I want the record to reflect, the Court, having researched the same, will rule as follows. The Court is gonna seek guidance, and I sought guidance, and found that this would be most appropriately addressed under Code of Criminal Procedure Article 726, notably 726(A), which reads, in pertinent part, (reading) "If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition, bearing upon the issue of whether he had mental state [sic] required for the offense charged, he shall, not later than 10 days prior to trial, or such reasonable time as the Court may permit, notify the district attorney in writing of such intention to file a copy of such notice with the clerk. The Court may, for cause shown, allow a late

filing of the pleas - - of the notice," rather, "or grant additional time to the parties to prepare for trial and make such orders as may be appropriate."

The Court is going to rely on the jurisprudential guidance of the Louisiana Supreme Court in State versus Trahan, which in pertinent part, suggests (reading) "The purpose of Article 726, and its progeny, and the other discovery rules of the Code of Criminal Procedure, is to eliminate unwarranted prejudice which could rise from surprise testimony. Intoxication is another condition, as defined under Code of Criminal Procedure Article 726, bearing on the issue of whether defendant had a mental state for of [sic] of the offense charged."

It should be noticed that - - that in that case, that the Supreme Court opined that without such notice the State had no way to prepare expert testimony to explain the blood alcohol levels and to put them into proper perspective.

The introduction of seemingly high blood alcohol levels by the defense experts, without an opportunity for rebuttal by the State, would needlessly confuse and possibly prejudice the jury.

With that, this Court finds proof sufficient that the relief as sought, which - - the preparation or the assertion of that defense is denied.

The State clarified, and the trial court agreed, that La.Code Crim.P. art. 727 specifically stated that it did not limit the right of a defendant to testify on his own behalf.[3] Defense counsel noted an objection to the trial court's ruling.

Defendant argues the State was not surprised by the intoxication defense and knew as early as January 18, 2014, that intoxication would be a defense:

Timothy pled not guilty/not guilty by reason of insanity. The State was not surprised he was raising an issue related to mental capacity to commit the crime. The Trial Court on January 18, 2014, during hearings stated: "You've tried to get people found through an investigator that may or may not have been with you on the day that you committed the crime to show that maybe you were intoxicated or you were maybe drugged up, or something along those lines". This followed statements made during a hearing on May 13, 2011, that Timothy simply did not remember what happened and that he did not remember [sic] the inability to remember was the result of a drug-induced stupor. The prosecutor's reply was that he understood that.

---

[3]Although the State and Defendant used La.Code Crim.P. art. 726 and article 727 in tandem, article 727 deals with an alibi defense, which is not pertinent to the present case. Rather, article 726 is the pertinent article.

During that same hearing, the prosecutor acknowledged there may be an issue of intoxication more so than sanity.

Thus, Defendant argues the record as a whole makes it clear the State knew intoxication was an issue. Additionally, Defendant contends the trial court had the discretion to allow the admission of the intoxication evidence, and its refusal to do so, prevented Defendant from presenting a defense without waiving his constitutional right to remain silent.

Contrary to Defendant's assertion that it had notice of the intoxication defense, the State asserts that it was never put on notice of such a defense because Defendant failed to follow the proper procedure. According to the State, the record references cited by Defendant as instances wherein the State should have been put on notice of the intoxication defense were vague and lacking the specificity needed for adequate notice. The State notes that Defendant offered no response to its discovery requests for any reports, mental exams, or scientific tests he proposed to use at trial and offered no response to its discovery requests for any evidence he expected to introduce concerning an alibi defense. The State disputes Defendant's assertion that his insanity defense should have put it on notice of the intoxication defense, noting that both doctors opined that Defendant's memory problems were self-serving and atypical. Finally, the State contends that it questioned several witnesses at trial about Defendant's condition on the date of the robbery, and each witness denied seeing any evidence of Defendant being intoxicated.[4]

Louisiana Code of Criminal Procedure Article 726 provides as follows:

A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as

---

[4] We note that the State makes no argument as to whether intoxication would be a proper defense under La.R.S. 14:15.

36

the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.

B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition.

In *State v. Trahan*, 576 So.2d 1, 6 (La.1990) (footnotes omitted)[5] the supreme court stated the following regarding La.Code Crim.P. art. 726:

The purpose of art. 726 and the other discovery rules in the Code of Criminal Procedure is to "eliminate unwarranted prejudice which could arise from surprise testimony." *State v. Toomer,* 395 So.2d 1320, 1329 (La.1981). Intoxication is an "other condition" bearing on the issue of whether the defendant had the mental state for the offense charged. *State v. Quinn,* 479 So.2d 592, 596 (La.App. 1st Cir.1985); *State v. Gipson,* 427 So.2d 1293, 1298 (La.App. 2d Cir.1983).

In the present case, the defense sought to use the blood alcohol levels to support its "tragic accident" theory-i.e., defendant did not intend to shoot the victim. The record contains no evidence defendant gave the required notice to the state under article 726. Without such notice, the state had no way to prepare expert testimony to explain the blood alcohol levels and put them into proper prospective. The introduction of seemingly high blood alcohol levels by the defense experts without an opportunity for rebuttal by the state would needlessly confuse and prejudice the jury. *State v. Caldwell,* 504 So.2d 853 (La.1987). Therefore, we find the trial court properly exercised its discretion under article 726 and excluded the evidence.

Defendant argues the blood alcohol levels were highly relevant for the purpose of supporting his version of the events and also for cross-examining the state witnesses. Of course, the right to present relevant evidence is an important component of defendant's constitutional right to present a defense and all relevant evidence necessary to that defense must be presented for a full adjudication. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *State v. Vigee,* 518 So.2d 501 (La.1988). We find defendant's rights in this regard were not impaired. A review of the record shows there was ample evidence supporting defendant's claim he had been drinking. Deputy Lincoln Spell, the first deputy to encounter defendant, testified he smelled of alcohol and slurred his words. Tracy

---

[5]On rehearing, the court noted that a joint motion to dismiss had been filed as a result of plea agreement entered in the case. Thus, the supreme court granted the motion to dismiss and recalled its order granting certiorari and review in the case. However, the supreme court and other courts have continued to cite *Trahan*.

Morgan testified defendant consumed two "Fuzzy Navels" (a drink consisting of peach schnapps and orange juice), four beers and four Jaegermeisters between 11:00 p.m. and 4:00 a.m. Defendant testified he had been drinking since about 4:00 p.m. on the afternoon preceding the shooting. The defense extensively cross-examined the state's expert on his failure to take defendant's intoxication into account in his reconstruction of the crime. Finally, we note the defense counsel actually mentioned the blood alcohol levels of defendant and the victim during his cross examination of the state's serology expert. This line of questioning was not excluded by the trial court and was available for consideration by the jury.

Taking into account all the circumstances, we find the trial court properly excluded the blood alcohol tests. This specification lacks merit.

By pointing to certain statements in the record, appellate counsel asserts the State was put on notice that Defendant intended to assert intoxication as a defense at trial. There is no indication, however, that written notice was given as required by La.Code Crim.P. art. 726. Furthermore, Defendant failed to properly preserve the issue for appeal by failing to proffer the evidence it was prevented from introducing. In *State v. Magee*, 11-574, pp. 60-61 (La. 9/28/12), 103 So.3d 285, 326, *cert. denied*, ___ U.S. ___, 134 S.Ct. 56 (2013) (citation omitted), the supreme court stated the following regarding the failure to proffer evidence:

Louisiana's Code of Evidence provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [w]hen the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel." La.C.E.art. 103(A)(2). Thus, in order to preserve for review an alleged error in a ruling excluding evidence, counsel must make known to the court the substance of the excluded testimony. This can be effected by proffer, either in the form of a complete record of the excluded testimony or a statement describing what the party expects to establish by the excluded evidence.

Defendant's counsel never gave a statement describing what he expected to establish by the evidence he claims was excluded. Thus, this court finds that he is now precluded from raising this issue on appeal.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In his third assignment of error, Defendant argues that his consecutive sentences of seventy-five years and five years, to be served without benefit of probation, parole, or suspension of sentence, for armed robbery and armed robbery with a firearm are unconstitutionally harsh and excessive. We disagree.

Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Although Defendant failed to object to the sentence imposed at the sentencing hearing and did not timely file a motion to reconsider sentence, this court has reviewed claims of excessiveness where no objection was made and no motion to reconsider sentence filed. *See State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, 562 U.S. 1150, 131 S.Ct. 932 (2011); *State v. Thomas*, 08-1358 (La.App. 3 Cir. 5/6/09), 18 So.3d 127; *State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied*, 09-1955 (La. 6/25/10), 38 So.3d 352; *State v. H.J.L.*, 08-823 (La.App. 3 Cir. 12/10/08), 999 So.2d 338, *writ denied*, 09-606 (La. 12/18/09), 23 So.3d 936; *State v. Quinn*, 09-1382 (La.App. 3 Cir. 5/12/10), 38 So.3d 1102, *writ denied*, 10-1355 (La. 1/7/11), 52 So.3d 885. Accordingly, we will review the sentence under a bare excessiveness claim. *See State v. Clark*, 06-508 (La.App. 3 Cir. 9/27/06), 940 So.2d 799, *writ denied*, 06-2857 (La. 9/21/07), 964 So.2d 324.

39

Louisiana courts have laid out the following guidelines with regard to constitutionally excessive sentence review:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957,

40

958[, *cert. denied*, 96-6329, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Applying the *Lisotta* factors, we first look to the nature of the crime. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. Armed robbery and armed robbery with a firearm are both classified as crimes of violence under La.R.S. 14:2. At sentencing, the trial court specifically noted "the lives that [Defendant] changed" due to Defendant's actions. Defendant's conduct during the commission of these crimes manifested deliberate cruelty to the victims. The trial judge noted that Defendant's actions "were life changing, and [the witnesses] readily admitted that their lives will never be the same as a result of the actions of [Defendant]." Defendant knowingly created a risk of death or of great bodily harm to multiple persons, and he used a firearm while committing the offenses.

Next, we examine Defendant's nature and background. The State presented testimony at the sentencing hearing that Defendant had "a lengthy criminal history," and that Defendant "threaten[ed] to kill these victims while putting [a] gun in their faces." At sentencing, Defendant denied that the prior felony convictions in Texas were his; however, the State asserted that they possessed certified copies of the convictions which contained Defendant's signature. Given Defendant's prior felony convictions, the likelihood of Defendant re-offending is high.

Finally, we look at the sentences imposed for similar crimes. Defendant received a seventy-five year sentence, where the maximum penalty for armed robbery is imprisonment at hard labor for not more than ninety-nine years, and

therefore represents roughly seventy-five percent of the maximum sentence he could have received. Additionally, Defendant received an additional five years, to be served consecutively to the seventy-five years, for committing armed robbery with a firearm. Louisiana Revised Statutes 14:64.3(A) states:

> [w]hen the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

As noted by the State in its brief to this court, Louisiana courts have frequently affirmed sentences of seventy-five years or more for armed robbery convictions. *See State v. Gross*, 05-903 (La.App. 5 Cir. 3/28/06), 927 So.2d 583, *writ denied*, 06-1465 (La. 2/16/07), 949 So.2d 408 (upheld a seventy-five year sentence for armed robbery); *State v. Mitchell*, 586 So.2d 701 (La.App. 3 Cir. 1991) (upheld a seventy-five year sentence for armed robbery as part of a plea bargain); and *State v. Gipson*, 37,132 (La.App. 2 Cir. 6/25/03), 850 So.2d 973, *writ denied*, 03-2238 (La. 1/30/04), 865 So.2d 75 (affirmed a seventy-five year sentence for armed robbery).

In light of the *Lisotta* factors, we cannot say the trial court abused its discretion in sentencing Defendant to seventy-five years at hard labor without benefits for armed robbery and an additional five years at hard labor without benefits, to be served consecutively, for armed robbery with a firearm.

We find that there is no merit to this assignment of error.

## PRO SE ASSIGNMENT OF ERROR:

Defendant alleges the trial court erred in denying two pre-trial motions he filed pursuant to *State v. Peart*, 621 So.2d 780 (La.1993) (excessive caseload may

42

result in failure to provide effective assistance of counsel). We will address each motion separately.

*First Peart Motion*

The first motion, filed on October 3, 2014, was titled "Defendant's Motion for Peart Hearing with Memorandum on Caseload Standards." The trial court conducted a hearing on Defendant's motion on October 28, 2015. The State pointed out that Defendant and his co-counsel, Mr. Shelton, had a "hybrid representation" relationship. The trial court heard the testimony of one witness, Benjamin Cormier, an attorney on the Public Defender's conflict list. The trial court granted the State's objections to the testimony of numerous other attorneys subpoenaed by Defendant to testify; namely, James Dixon, Adam Johnson, Andrew Casanave, Mitch Bergeron, Harry Fontenot, Michael Ned, King Alexander, Eugene Bouquet, Michael McHale, and Robert Shelton, several of which were Defendant's present or former co-counsels.

The trial court issued the following ruling:

Let the record reflect the Court must consider the factors pursuant to State versus Peart, 621 Southern Second 870. The Court must consider, one, if the trial court has sufficient information before trial that the judge can most efficiently inquire to [sic] any inadequacies and attempt to remedy it.

I want the record to reflect there's been absolutely no evidence to suggest that counsel has not provided, to this point, adequate representation of the defendant here today.

Factor number two, because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must necessarily be individualized and fact driven. It should be noted there has been absolutely no evidence presented today to suggest that in this case that inadequate and constitutionally effective counsel has not been afforded to this defendant.

Number -- point three of factors to be considered under State versus Peart. Louisiana Constitutional Article 1 Section 13 is clearly unequivocal and that at each stage of these proceedings every person

is entitled to assistance of counsel appointed by the court if he is indigent and charged with a crime punishable by imprisonment, that assistance must be reasonably effective.

The Court having ruled on factor two that this Court finds at this time that there was constitutionally effective assistance well provided for by counsel on record.

And, number four, factor four, reasonably effective assistance of counsel means that the lawyer not only possessed adequate skill and knowledge but also that he has the time and resources to apply his skill and knowledge to the task of defending each of his individual clients.

There's . . . nothing to suggest, no evidence produced today to suggest that counsel has done -- has not done the same and has provided, at every step of these proceedings, effective counsel.

And as a result thereof, the Court is going to grant [for] the State [and] Rule that we should proceed and that all Peart criteria has been met.

Defendant sought review of the trial court's ruling in this court, and this court issued the following ruling:

**WRIT DENIED:** Defendant filed a pro se writ application with this court seeking supervisory review of the trial court's October 28, 2015, denial of Defendant's pro se motions to substitute counsel and for relief pursuant to *State v. Peart*, 621 So.2d 780 (La.1993). Defendant's claims concerning his motion to substitute counsel are without merit.

Defendant contests the trial court's denial of the *Peart* motion challenging the general caseload standards and practices of the Louisiana Public Defender Board. However, Defendant's case involves hybrid representation wherein the assisting attorney was a private lawyer contracted through the Louisiana Public Defender Board as conflict counsel. As the claims raised in Defendant's *Peart* motion were not germane to the reality of Defendant's representation situation, Defendant was not entitled to relief under *Peart.* Therefore, Defendant is not entitled to relief on his claims concerning the trial court's handling of and ruling on Defendant's *Peart* motion.

Accordingly, Defendant's writ application is denied.

*State v. Queen*, 15-1163 (La.App. 3 Cir. 2/23/16) (unpublished opinion).

This court has held that great deference should be afforded to pre-trial

decisions:

44

> Although a defendant may seek review of a pretrial ruling even after a pretrial supervisory writ application is denied, when the defendant does not present any additional evidence on the issue after the pretrial ruling, the issue can be rejected. *State v. Hebert*, 97-1742 (La.App. 3 Cir. 6/3/98), 716 So.2d 63, *writ denied*, 98-1813 (La. 11/13/98), 730 So.2d 455, *cert. denied*, 529 U.S. 1072, 120 S.Ct. 1685, 146 L.Ed.2d 492 (2000) (quoting *State v. Magee*, 93-643, p. 2 (La.App. 3 Cir. 10/5/94), 643 So.2d 497, 499). However, "[j]udicial efficiency demands that this court accord great deference to its pre-trial decision unless it is apparent that the determination was patently erroneous and produced unjust results." *Hebert*, 716 So.2d at 68. Our review of the record reveals no additional evidence for the defendant's allegations of prosecutorial misconduct which would support his pretrial motions.

*State v. Perry*, 12-298, p. 7 (La.App. 3 Cir. 11/7/12), 101 So.3d 575, 580, *writ denied*, 12-2657 (La. 5/24/13), 116 So.3d 659.

We give such deference to this court's pre-trial ruling upholding the trial court's denial of Defendant's first *Peart* motion. Although Defendant argues that *Peart* applies to his situation, Defendant cites no cases that apply *Peart* to a hybrid-representation situation. Defendant simply cites cases in support of his right to hybrid representation. Thus, Defendant fails to offer additional evidence and fails to prove this court's pre-trial ruling was patently erroneous or produced an unjust result. Accordingly, we will abide by our pre-trial decision and not reconsider whether the trial court erred in its October 28, 2015 denial of Defendant's first *Peart* motion.

### Second Peart Motion

In his pro se brief, Defendant argues the trial court erred in summarily denying a second motion for a *Peart* hearing filed by Defendant on October 17, 2016, the day before trial. Defendant set the groundwork for this second *Peart* motion after this court ruled that Defendant's hybrid representation prevented him from receiving any relief under *Peart*. On June 17, 2016, Defendant filed a pro se "Motion for Court to Rescind its Order of August 20, 2009 Granting Hybrid

Representation." At a hearing on the June 17, 2016 motion, Defendant requested that Mr. Shelton represent him in full:

> So, I'm asking the Court to rescind its order for me to be co-counsel on the case and just let Robert Shelton straight up represent me, and - - then - - that way I can come back with a Peart and - - from - - refile the Peart motion, and we can - - There's no need to have another hearing, because we already got a transcript of that hearing, if the State will stipulate it, and I'll take it back up on a writ with that - - without having to be a co-counsel on the case, and so - -

The trial court initially denied Defendant's request to have Mr. Shelton represent him in full, but reconsidered and granted the request on October 17, 2016, the day before trial. Before the start of trial the following day, October 18, 2016, the State notified the trial court that Defendant had filed the second *Peart* motion. In the motion, Defendant again asserted that his public defender was burdened by an excessive caseload and/or inadequate resources. Defendant asserted that Mr. Shelton's caseload was almost more than double the state caseload standards:

> According to data in public records obtained from the CPDO, Mr. Shelton's contemporaneous cases being handled have, at almost all times, exceeded almost twice the numerical limit annually of the state caseload standards for the types of cases he handles. Additionally, Mr. Shelton carries an unknown number of cases for solvent clients. Moreover, his annual caseload count must be presumed to be significantly greater than the sum of his indigent and solvent clients' cases he contemporaneously handles, considering the fact that he disposes of and gains cases over the course of a year. In addition to the strain of an excessive caseload, Mr. Shelton's ability to diligently represent clients is further exacerbated by inadequate support services to maintain his workload. He employs only a secretary; he does not employ a paralegal or an in-house investigator, relying instead on funds granted at the discretion of the District Defender or court upon application, on a case-by-case basis, to acquire expert services for clients.

As he did in the first *Peart* motion, Defendant revealed that the maximum number of cases recommended by the Department of Justice National Advisory Commission on Criminal Justice Standards and Goals Task Force on the Courts

was 150 felonies, 400 misdemeanors, 200 juvenile cases, 200 mental health cases, and twenty-five appeals. In conclusion, Defendant asked for the following:

> WHEREFORE, premises considered, defendant prays this Honorable Court set this matter for a contradictory hearing and, after taking evidence, order such relief as necessary to reduce his public defender's caseload, to provide for adequate resources, and fashion other relief to assure an effective appointment of counsel for defendant, or otherwise order a stay of defendant's prosecution until he is provided with counsel likely to provide reasonably effective assistance of counsel.

In response to Defendant's second *Peart* motion, the State asserted that the filing of the motion was nothing more than a delay tactic and was "purely manipulative in nature." Defendant's counsel had no objection to the motion being denied, and the trial court denied the motion without a hearing.

In his pro se brief, Defendant contends the trial court abused its discretion in summarily denying his second *Peart* motion. Citing *State v. Melon*, *95*-2209 (La. 9/22/95), 660 So.2d 466, Defendant asserts he had a right for his pro se motion to be heard before trial. Defendant asks this court to place the appeal in abeyance and remand the case for a full and fair *Peart* hearing.

In *State v. Reeves*, 06-2419, pp. 14-15 (La. 5/5/09), 11 So.3d 1031, 1043, *cert. denied*, 558 U.S. 1031, 130 S.Ct. 637 (2009), the supreme court summarized the holding in *Peart* as follows:

> In *Peart,* this court held, *inter alia,* that a defendant may raise certain ineffective assistance of counsel claims, prior to trial, when judicial economy demands it. *Id.,* 621 So.2d at 787. Additionally, the court held that a trial judge must make findings individually tailored to each defendant with regard to the representation he received or was receiving. *Id.,* 621 So.2d at 788. The court also held, after a detailed review of the lack of funding and excessive caseloads of the indigent defenders in that particular section of Orleans Parish Criminal District Court, that defendants who were assigned counsel in that section received constitutionally deficient counsel. *Id.,* 621 So.2d at 790. So finding, the court further held that a rebuttable presumption of counsel's ineffectiveness could be applied in cases arising out of that section of court. *Id.,* 621 So.2d at 791. Finally, the court warned:

47

If legislative action is not forthcoming and indigent defense reform does not take place, this Court, in the exercise of its constitutional and inherent power and supervisory jurisdiction, may find it necessary to employ the more intrusive and specific measures it has thus far avoided to ensure that indigent defendants receive reasonably effective assistance of counsel.

*Id.,* 621 So.2d at 791. The court remanded the case to the district court for retrial of the "Motion for Relief" filed on behalf of defendant, Peart, and for trial of other motions filed by indigent defendants in that section of court asserting pretrial claims of ineffective assistance of counsel. *Id.,* 621 So.2d at 791. In fashioning a remedy, this court instructed the district court:

If the court, applying this presumption [of counsel ineffectiveness] and weighing all evidence presented, finds that Leonard Peart or any other defendant in [that section] is not receiving the reasonably effective assistance of counsel the constitution requires, and the court finds itself unable to order any other relief which would remedy the situation, then the court shall not permit the prosecution to go forward until the defendant is provided with reasonably effective assistance of counsel.

*Id.,* 621 So.2d at 791-792.

In *Peart*, the supreme court explained that although ineffective assistance of counsel claims are generally relegated to post-conviction proceedings, in some instances it is appropriate to address such claims pre-trial:

Ineffective assistance of counsel claims are generally raised in applications for post[-]conviction relief. *See, e.g., State v. Truitt,* 500 So.2d 355, 359 (La.1987). This Court has more often than not declined to consider ineffective assistance of counsel claims on appeal because the record in such cases is usually insufficient to assess such a claim. *Id.; State v. Barnes,* 365 So.2d 1282, 1285 (La.1978). Examining ineffective assistance of counsel claims after a conviction has been affirmed on appeal "enables the district judge in a proper case to order a full evidentiary hearing." *State v. Barnes, supra,* at 1285.

However, this general practice of deferring ineffective assistance of counsel claims to post-conviction proceedings is not without exception. When "the record discloses evidence needed to decide the issue," an appellate court may decide it. *State v. Ratcliff,* 416 So.2d 528, 530 (La.1982). For example, ineffective assistance of counsel claims based on allegations that the attorney is faced with a

48

conflict of interest are routinely brought to the attention of the trial court and considered before trial. *See, e.g., State v. McNeal,* 594 So.2d 876 (La.1992) (indigent defender's motion to withdraw from representation on ground of conflict of interest granted). Likewise, Louisiana courts consider before trial claims that defense counsel are incompetent and for that reason unable to provide reasonably effective representation. *See, e.g., State v. Wilson,* 608 So.2d 151 (La.1992) (issue of appointed counsel's competence exhaustively litigated before trial). The underlying rationale in all the above situations is the same: the judge considering the claim must have sufficient evidence before him to make a determination.

If the trial court has sufficient information before trial, the judge can most efficiently inquire into any inadequacy and attempt to remedy it. Thus, treating ineffective assistance claims before trial where possible will further the interests of judicial economy. *State v. Ratcliff, supra.* It will also protect defendants' constitutional rights, and preserve the integrity of the trial process. It matters not that the ineffective assistance rendered may or may not affect the outcome of the trial to the defendant's detriment. *See Luckey v. Harris,* 860 F.2d 1012, 1017 (11th Cir.1988), *cert. denied,* 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990) (constitutional provisions securing assistance of counsel for defendants protect process rights "that do not affect the outcome of a trial"); Rodger Citron, Note, *(Un)Luckey v. Miller: The Case for a Structural Injunction to Improve Indigent Defense Services,* 101 Yale L.J. 481, 493-94 (1991) ("the right to counsel is more than just the right to an outcome").

If the judge has an adequate record before him and a defendant has claimed that he is receiving ineffective assistance of counsel before trial, the judge may rule on the ineffective assistance of counsel claim at that time.

*Peart*, 621 So.2d at 787.

Notably, the supreme court's pre-trial analysis in *Peart* differs from a traditional ineffective assistance of counsel analysis. In a traditional ineffective assistance of counsel analysis, a defendant must show his counsel's ineffectiveness prejudiced the outcome of his trial. In the above excerpt, the court in *Peart* specifically stated that when ineffective assistance of counsel claims are addressed pre-trial, it matters not that the ineffective assistance rendered may or may not affect the outcome of trial. *Peart*, 621 So.2d at 787.

In this same vein, the supreme court in *Reeves* stated that when it reviewed the pre-trial *Peart* claim before it, it reviewed the trial court's ruling based only on the pre-trial circumstances before the trial court:

> This court has previously held that "[a] claim of ineffectiveness is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal." *State v. Miller,* 1999–0192 p. 25 (La.9/6/00), 776 So.2d 396, 411, *cert. denied,* 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001). While it is generally true that ineffectiveness claims are considered on post-conviction, *Peart* held that a claim of ineffectiveness may be raised pretrial, based on counsel's ability to provide constitutionally effective counsel due to resources available and caseload concerns. In this case, the *Peart* motions raised pretrial dealt with the pretrial circumstances alleged, and the district court made its ruling based on those circumstances. Therefore, our analysis will evaluate the district court's pretrial ruling only. Although defense counsel on appeal has raised allegations of ineffective assistance of counsel occurring at trial, those matters are relegated to post-conviction, where an evidentiary hearing may be conducted, if necessary, to determine the merits of the defendant's allegations.

*Reeves*, 11 So.3d at 1074-75 (footnote omitted).

Like the supreme court in *Reeves*, we have the pre-trial evidence and circumstances as they existed at the time the trial court denied Defendant's second *Peart* motion. As stated previously, the trial court denied the second *Peart* motion without a hearing. Since a hearing was held for Defendant's first *Peart* motion, we reviewed the evidence introduced by Defendant at the first *Peart* hearing to fully evaluate the pre-trial record as it existed when the trial court denied Defendant's second *Peart* motion. At the hearing on the first *Peart* motion, the trial court allowed the testimony of one witness, Benjamin Cormier, an attorney on the Public Defender's conflict list. Mr. Cormier testified mostly as to his own caseload. When the State directly asked Mr. Cormier if Calcasieu Parish attorneys acting as conflict counsel had a caseload problem under *Peart*, Mr. Cormier said that they did not:

> No. And that's partially because a year or two ago[,] the panel actually got disbanded for a brief period of time. When that happened, those cases got disbursed to a bunch of attorneys who weren't necessarily criminal attorneys, and the DA's Office basically like gave those guys really good deals and . . . when the funding was re-established and the case load came back to us, it was less than it was before.

Mr. Cormier was not questioned and offered no testimony as to Mr. Shelton's caseload.

Although Defendant attempted to call numerous other attorneys to testify, including his own co-counsel at the time, Robert Shelton, the trial court sustained the State's objection to each of the witnesses. Defendant argued that he could not establish his claim without Mr. Shelton's testimony, but the trial court denied Defendant's request to call Mr. Shelton. When the trial court asked for argument on the motion, Defendant stated:

> MR. QUEEN:
>
> Your Honor, I've been denied numerous witnesses in this matter. I have documents that I needed to get into the record through these witnesses to establish my claim. There is no way that I could support a claim with just Mr. Cormier who was brought here just to establish an instance of ineffective assistance of counsel in the district.
>
> I've been denied my right to an adequate Peart hearing.

This court previously set forth the trial court's ruling on Defendant's first *Peart* motion. In essence, the trial court found there was no evidence to suggest that counsel had not provided, up to that point, adequate representation of Defendant. As shown in the following excerpt from *Reeves*, the type of evidence needed to evaluate a *Peart* claim is very fact-specific, detailed and usually comes from the counsel himself:

> In evaluating Ware's ineffective assistance claim, the district court was required to undertake a detailed examination of the specific facts and circumstances of the case. This detailed examination is necessary because there is no precise definition of reasonably effective assistance of counsel, which cannot be defined in a vacuum.

Thus, of necessity, each ineffective assistance claim demands an individual, fact-specific inquiry. *See Peart,* 621 So.2d at 788. As stated in *Peart,*

> . . . the true inquiry [for the district court] is whether an *individual* defendant has been provided with reasonably effective assistance, and no general finding by the trial court regarding a given lawyer's handling of other cases, or workload generally, can answer that very specific question as to an individual defendant and the defense being furnished him. *Id.,* 621 So.2d at 788 (emphasis in original).

In reviewing a district court's decision on a claim of ineffective assistance, "we take reasonably effective assistance of counsel to mean that the lawyer not only possesses adequate skill and knowledge, but also that he has the time and resources to apply his skill and knowledge to the task of defending each of his individual clients." *Peart,* 621 So.2d at 789.

. . . .

After reviewing the record and argument of counsel, we find that Ware did not provide sufficient evidence to show that his caseload was so burdensome, and the resources available to him were so limited, as to result in the delivery of constitutionally ineffective assistance of counsel. The record shows that Ware admitted that the defense's own expert indicated that Ware's caseload would not violate ABA guidelines. Nor would Ware's caseload exceed the standards enunciated in the ethics opinion on which the defense relied. On cross-examination, Ware admitted that he makes the decision as to those cases with which he will be involved. Moreover, Ware also admitted that one of the other capital cases with which he was involved had six attorneys working on the defense.

. . . .

By Ware's own admission, he could select those cases, other than capital cases, for which he would represent the indigent defendants or for which he would render assistance to staff attorneys within his office. Ware did not have a specific division of court for which he was responsible. Ware's caseload did not exceed ABA guidelines or the guidelines expressed in the ethics opinion proffered in evidence in support of his contention. Ware was assisted by two other attorneys in this matter. He was provided with transcripts of the first trial, attorney notes on evidence and strategy by Reeves' counsel in the first trial, and access to those attorneys should questions arise. Reeves was provided with funding for each expert witness for which the defense requested financial assistance, including scientific witnesses and a jury consultant.

By contrast, the evidence submitted in *Peart* was much more detailed and showed, beyond doubt, the burdensome nature of the attorney's caseload and the complete lack of resources available to him in his attempt to represent his indigent clients. The public defender in *Peart,* Rick Teissier, presented evidence that, at the time of his appointment, he was personally handling 70 active felony cases. His clients were routinely incarcerated 30 to 70 days before he was able to meet with them. In a seven month period, Teissier represented 418 defendants. Of these, he entered 130 guilty pleas at arraignment. Teissier had at least one serious case, defined as an offense necessarily punishable by a jail term which may not be suspended (including first degree murder, second degree murder, aggravated rape, aggravated kidnapping, armed robbery and possession of heroin), set for trial for every trial date during that seven month period. Teissier's public defender's office only had enough funds to hire three investigators to assist in the investigation of 7000 cases annually in ten sections of court. Teissier presented evidence that in a routine case, he received no investigative support at all. The public defender's office had no funds for expert witnesses; its library was inadequate. *Peart,* 621 So.2d at 784.

We find the circumstances which were confronting Ware are easily distinguishable from the circumstances with which attorney Teissier had to contend as public defender in *Peart.* Moreover, our own review of the record shows that Reeves' counsel acted professionally and knowledgeably throughout the pretrial proceedings. Counsel's representation, especially when challenging the scientific evidence presented by the state, showed tremendous preparation and skill. We find no error in the district court's ruling which held that Ware failed to provide sufficient evidence to show that his caseload was so burdensome, and the resources available to him were so limited, as to result in the delivery of constitutionally ineffective assistance of counsel. *See also State v. Lee,* 2005-2098 p. 42-43 (La.1/16/08), 976 So.2d 109, 138, *cert. denied,* —— U.S. ——, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008).

*Reeves*, 11 So.3d at 1075-77 (footnotes omitted).

The type of evidence presented to the court in *Reeves* and *Peart* was not presented in this case. Defendant was prevented from doing so. At the hearing on the first *Peart* motion, Defendant was prevented from calling his co-counsel and other witnesses to testify. At the hearing on the second *Peart* motion, Defendant was prevented from calling any witnesses. Thus, we cannot determine, based on the record before the court, whether Defendant's counsel was ineffective because of an excessive caseload or lack of resources.

This court has found no cases addressing the remedy in such a situation wherein the record on appeal was not sufficient to review the *Peart* claim. However, analogous jurisprudence exists for conflict of interest claims raised pre-trial. Similar to a *Peart* claim of ineffective assistance of counsel raised pre-trial, proof of prejudice is not required for a conflict-of-interest claim raised pre-trial:

> In a pretrial context, regardless of how the conflict of interest issue arises, the trial court has two options to avoid a conflict of interest: appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. *Tart,* 94-0025 at 19-20, 672 So.2d at 125 (relying on *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)); *State v. Edwards,* 430 So.2d 60, 62 (La.1983); *State v. Marshall,* 414 So.2d 684, 687-88 (La.1982). Failure to do one or the other in a case in which an actual conflict exists requires reversal. *Holloway,* 435 U.S. at 480, 98 S.Ct. at 1181; *State v. Carmouche,* 508 So.2d 792, 805 (La.1987) (on reh'g). As we stated in *Franklin,* 400 So.2d at 620, "If an actual conflict exists, there is no need for a defendant to prove that he was also prejudiced thereby." Accordingly, in this case we are called upon to determine whether an actual conflict of interest existed and, if so, whether the defendant knowingly and intelligently waived his right to conflict-free counsel and whether the trial court took adequate steps to assure that defendant was afforded the very important requisite that the defendant's representation be conflict free.

*State v. Cisco*, 01-2732, p. 17 (La. 12/3/03), 861 So.2d 118, 130, *cert. denied*, 541 U.S. 1005, 124 S.Ct. 2023 (2004) (footnote omitted).

In *State v. Scott*, 15-975 (La.App. 3 Cir. 4/27/16), this court was faced with a conflict-of-interest claim raised prior to sentencing that could not be decided based on the appellate record. Finding that remand for an evidentiary hearing was the appropriate remedy, this court stated:

> While an actual conflict mandates reversal and would require resentencing in this case, the record does not contain evidence to support Defendant's claim that there was an "actual conflict" between he and Mr. Chapman. However, it is clear that counsel was previously substituted at Defendant's request. As previously noted, the transcript of the relevant hearing was neither included in the record nor was there any motion to supplement filed. Accordingly, we will remand this case to the trial court for an evidentiary hearing to be conducted within thirty days to determine whether there was an "actual conflict"

54

between Defendant and Mr. Chapman such that Defendant must be resentenced, or whether there was merely a personality conflict between the two. The trial court is further ordered to prepare and lodge an appellate record with this court that contains the transcript of the above-referenced evidentiary hearing within ten days of the hearing. *See State v. Fuslier,* 06-1438 (La.App. 3 Cir. 4/4/07), 954 So.2d 866. Once the record is lodged with this court, the State and Defendant will be given the opportunity to file briefs should either party wish to raise any issue arising from the hearing.

*Scott*, 15-975 at p. 2.

Similarly, in *State v. A.S*, 09-555, pp. 5-6 (La.App. 3 Cir. 12/9/09), 24 So.3d 1009, 1012-13, this court found that remand for an evidentiary hearing was the appropriate remedy when the record did not contain enough information to review a conflict-of-interest claim:

> Failure to appoint conflict-free counsel or take adequate steps to ascertain whether a risk of a conflict of interest is too remote to warrant conflict-free counsel requires reversal only when an actual conflict exists. This Court cannot determine, based on the record before us, whether an actual conflict exists in the case at bar. The only specific reference to the basis for Pitman's conflict was the state's remark that Pitman "represented the mother involved in this case and she is also named."

> In *State in the Interest of D.A.,* 08-346, p. 22 (La.App. 3 Cir. 8/29/08), 995 So.2d 11, 25, this court discussed the remedy for such situations as follows:

>> Courts have relegated conflict of counsel issues to post-conviction relief when the record is insufficient to address the issue. *See State v. M.M.,* 00-1296 (La.App. 3 Cir. 8/29/01), 802 So.2d 43, *writ denied,* 01-3370 (La.10/4/02), 826 So.2d 1121; *State v. Griffin,* 02-1341 (La.App. 3 Cir. 3/5/03), 839 So.2d 1148; *State v. Anderson,* 29,282 (La.App. 2 Cir. 6/18/97), 697 So.2d 651. (*Griffin* and *Anderson* concerned ineffective assistance of counsel claims based on conflict issues). However, in other cases, courts have felt that the interest of justice and judicial economy would be better served by remanding the case for an evidentiary hearing so that the issue could be resolved promptly. *See State v. Lee,* 00-183 (La.App. 1 Cir. 2/16/01), 788 So.2d 452, *writ denied,* 00-1611 (La.3/30/01), 788 So.2d 442, and *State v. Lemon,* 29,587, 29,588 (La.App. 2 Cir. 8/20/97), 698 So.2d 1057. Since this is a juvenile case, and in the interest of justice, this court will remand the case for an

evidentiary hearing as opposed to relegating the issue to post-conviction relief proceedings.

In *State v. Waters,* 00-356 (La.3/12/01), 780 So.2d 1053, the defendant raised the issue of conflict of interest for the first time before the supreme court. The supreme court noted that the defendant was represented at his guilty plea by the same attorney who represented the St. Tammany Parish Sheriff's Office, the police department responsible for arresting him. The supreme court then issued the following ruling:

> Under these circumstances, we deem it appropriate to address this claim while the case remains pending on direct review. *See State v. Wille,* 559 So.2d 1321 (La.1990) (conditionally affirming the defendant's conviction and sentence and remanding for an evidentiary hearing on whether counsel rendered ineffective assistance of counsel as the result of a conflict of interest). Accordingly, the decision of the court of appeal is reversed, respondent's conviction and sentence are conditionally affirmed, and this case is remanded to the district court for purposes of conducting an evidentiary hearing on the question of whether respondent's trial counsel labored under an actual conflict of interest which adversely affected his performance. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Respondent may appeal from any adverse ruling on the conflict issue.

We find the interests of justice will best be served by remanding this matter to the trial court for the purpose of conducting a hearing to determine whether the defendant's counsel had an actual conflict of interest that would have prejudiced the defendant.

Accordingly, we remand this matter to the trial court for the purpose of conducting a hearing to determine whether an actual conflict existed that would have prevented the defendant from having conflict-free counsel.

Considering the inadequacy of the present record to determine whether the trial court correctly denied Defendant's second *Peart* motion, we likewise remand the present case for an evidentiary hearing on that motion. At the evidentiary hearing, Defendant should be allowed to present evidence similar to the evidence presented in *Peart* and *Reeves* as to his counsel's caseload and resources at the time he represented Defendant.

56

**DECREE:**

Defendant's convictions and sentences are conditionally affirmed. The case is remanded to the trial court to conduct an evidentiary hearing on the question of whether Defendant's counsel was ineffective based on an excessive caseload and/or inadequate resources. If the evidence shows Defendant's counsel was ineffective, the trial court must set aside Defendant's convictions and sentences. Defendant should be appointed reasonably effective counsel to represent him in further proceedings. Defendant may appeal from any adverse ruling on this issue, and in the absence of such appeal, this court affirms the Defendant's convictions and sentences. In the event Defendant's convictions and sentences are affirmed, the trial court is directed to inform the Defendant of the correct prescriptive period of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the trial court's ruling on the evidentiary hearing and to file written proof that the Defendant received the notice in the record of the proceedings.

**CONVICTIONS AND SENTENCES CONDITIONALLY AFFIRMED. CASE REMANDED WITH INSTRUCTIONS.**