# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-175

STATE OF LOUISIANA

VERSUS

JALEEL J. TOUSANT

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NUMBER C29723
HONORABLE DESIREE D. DYESS, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Clayton Davis, Judges.

AFFIRMED.

**Billy Joe Harrington, District Attorney**
**Clifford R. Strider, III, Assistant District Attorney**
**R. Bray Williams, Assistant District Attorney**
**Office of the District Attorney**
**Natchitoches Parish**
**200 Church Street**
**Natchitoches, Louisiana  71457**
**(318) 357-2214**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Chad M. Ikerd**
**IKERD LAW FIRM, LLC**
**Louisiana Appellate Project**
**600 Jefferson Street, Suite 903**
**Lafayette, Louisiana  70501**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jaleel J. Tousant**

**WILSON, Judge.**

Defendant, Jaleel J. Tousant,[1] was convicted of principal to armed robbery, a violation of La.R.S. 14:24 and 14:64. He was sentenced to seventy-five years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appeals both his conviction and sentence. For the following reasons, we affirm Defendant's conviction and sentence.

I.

## ISSUES

Defendant alleges two assignments of error regarding his conviction and sentence:

1. The State failed to sufficiently prove that [Defendant] was guilty of principal to armed robbery with a dangerous weapon.

2. Seventy-five [] years at hard labor without benefit of parole, probation, or suspension of sentence is constitutionally excessive for principal to armed robbery with a dangerous weapon.

II.

## FACTS AND PROCEDURAL HISTORY

On the evening of January 27, 2020, officers from the Natchitoches Police Department responded to a residence where a shooting had occurred. Upon entering the residence, officers found three victims, each with multiple gunshot wounds. Larry Batiste (Batiste) was deceased. Brianna Robinson (Robinson) was on the couch, screaming in pain. Hiram Phillips, Jr. (Phillips) was on the floor. Phillips later died from his injuries. Robinson's dog also died from gunshot wounds. Phillips' young son was present in the residence but was physically unharmed.

---

[1] Although Defendant's name is spelled other ways at various points in the record, "Tousant" is the spelling that appears on the amended indictment and, accordingly, is the spelling used in this opinion.

Robinson told Detective Rudolph Glass, III (Detective Glass), that "BDB and two of his friends" were the assailants. Detective Glass testified that "BDB" is Jesse Petite, Jr. (Petite). Police later identified the other two persons as Daerion Latchie (Latchie) and Defendant.

On May 18, 2023, in an amended indictment,[2] the State charged Defendant as a principal to armed robbery, a violation of La.R.S 14:24 and La.R.S. 14:64. On May 26, 2023, following a four-day trial, the jury found Defendant guilty as charged. On July 19, 2023, the trial court sentenced Defendant to seventy-five years at hard labor, without the benefit of parole, probation, or suspension of sentence. Defendant now appeals his conviction and sentence.

## III.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, this court reviewed the instant appeal for errors patent on the face of the record and found none.

## IV.

## LAW AND DISCUSSION

*Sufficiency of the Evidence*

In his first assignment of error, Defendant argues that the evidence adduced against him at trial was insufficient to support his conviction. The analysis for such claims is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* [*v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)] standard of review. In order for

---

[2] Previous indictments charged Defendant as a principal to first degree murder and attempted first degree murder.

2

this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371 (citations omitted).

The jury convicted Defendant as a principal to armed robbery. "Principal" is defined by La.R.S. 14:24:

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

Armed robbery is defined by La.R.S. 14:64(A):

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

Thus, the State had to adduce sufficient evidence to prove beyond a reasonable doubt that Defendant aided or abetted the armed, forceful taking of a thing of value. We find that the evidence and testimony show that Defendant intentionally aided his two accomplices in committing armed robbery.

Trooper John Wynn (Trooper Wynn) of the Louisiana State Police testified that on January 27, 2020, he was a detective with the Natchitoches Police Department and participated in this investigation. Trooper Wynn took pictures of the scene and gathered other evidence. He went to railroad tracks behind the subject house and found a small amount of loose bills. In connection with a search warrant, Trooper Wynn participated in the search of another residence and located a pink camouflage pistol.

Sergeant William Connell (Sergeant Connell) testified that he was the lead detective in this case. When he arrived on the scene, other officers were already there, and two of the victims had already been taken to the hospital. In the course of

3

the investigation, police identified two of the assailants (Petite and Latchie) by name but did not have the name of the third robber. Later, Sergeant Connell interviewed Robinson, who provided Defendant's Facebook profile to police. It was under a nickname, but Trooper Trent Parrott (Trooper Parrott) recognized Defendant. Latchie gave police Defendant's name.

Sergeant Connell testified that when police arrested Defendant at his apartment, they also conducted a search and found the pink camouflage pistol mentioned by Trooper Wynn. During the investigation, Robinson, Latchie, and Defendant each advised police that the pink camouflage pistol belonged to Phillips. Sergeant Connell testified that various phones found at the scene, including one found outside a window, were either too damaged to be of use or did not provide any data pertinent to the case.

Michael Stelly (Stelly), the satellite laboratory director of the Alexandria branch of the North Louisiana Crime Laboratory, was accepted by the trial court as an expert in firearm identification, ballistics, and tool marks. Stelly's analysis indicated that some of the bullets fired at the scene were .38 caliber, .357 Magnum, and possibly 9 mm. He explained that these three types of bullets all have the same diameter but have different weights. There were .380 caliber cartridges recovered at the scene. Stelly also noted that .380 caliber bullets can be fired from a 9 mm weapon. Stelly further testified that the .380 casings were from a semi-automatic weapon, while the .38 and .357 bullets are normally fired from revolvers. Stelly testified that at least three weapons were fired at the scene. He made this determination based upon markings found on various rounds recovered from the scene.

On cross-examination, Stelly noted that one handgun was submitted to the lab for testing. He testified that the casings and bullets found at the scene were not fired from said gun, which the record shows was a pink camouflage pistol.

Trooper Parrott of the Louisiana State Police testified that on the date of the crime, he was a detective with the Natchitoches Police Department. During the investigation, he took a recorded statement from Defendant. The State played a video recording of said statement for the jury.[3] According to this statement, Defendant's initial role in the robbery was to grab the money, which his accomplices thought was $20,000.00. Later, his role was to watch the front door of the residence to prevent anybody from leaving. The back door was already nailed shut. The robbery was supposed to be a "jack," i.e., a robbery of illicit items from a drug dealer, who would be hesitant to report the taking to police.

According to Defendant's statement, Petite went in first because he had some prior association with Phillips. Petite planned to signal Latchie with a phone call. Upon receiving the signal, Latchie and Defendant entered the home. The shooting started within a couple of minutes of Latchie and Defendant's entry. As the shots continued, Defendant grabbed the pink camouflage pistol and headed for the back of the house. Defendant left through a back window, ran down the nearby railroad tracks, and hid the stolen gun at his sister's house.

Defendant stated that his intention was to commit a robbery, not a murder. On cross-examination, Trooper Parrott acknowledged that he found Defendant to be generally credible. On re-direct, Trooper Parrott noted that Defendant stated that two guns were used in the robbery, but the physical evidence showed that three guns were used.

---

[3] The transcript was excluded by the trial court due to multiple inaccuracies contained therein.

The surviving victim, Robinson, also testified at trial. She was in a romantic relationship with Phillips and lived with him. She testified that Petite and Phillips were best friends. On the day of the offense, Robinson, Phillips, and Phillips' young son ran errands. Petite accompanied them. When they finished their errands, they went to Phillips' residence. Batiste was there. Phillips and Petite talked about music for a few minutes. Petite then let Defendant and Latchie into the house. Robinson thought that Defendant and Latchie acted strangely, as neither of them spoke. According to Robinson, Latchie produced a gun and shot Batiste, then aimed at Phillips. The latter threw himself over Robinson, who "balled up" with her dog in her lap. She was hit by gunfire, and she kept her eyes closed as the men searched the house. Phillips' son was in his room as these events unfolded.

Under cross-examination, Robinson stated that she saw Defendant with a small black gun but did not see him shoot it. She testified that other than the pink camouflage pistol, she did not know of anything taken from the house.

Following Robinson's testimony, the State rested. Detective Connell, who took two statements from Robinson during the investigation of the crime at issue, was the first witness called for the defense. One statement was audio recorded, and one was video recorded. In the video statement, Robinson told Detective Connell that she did not know whether Defendant had a gun because she was balled up. Detective Connell acknowledged that crime scene photos showed that a pellet gun, possibly two, and a scope for a firearm were found at the scene. On re-direct, Detective Connell reiterated that Defendant admitted to taking the pink camouflage pistol from the residence. In one of the interviews, Robinson told Detective Connell that the only person she actually saw shooting was Latchie. In one of her statements, Robinson said that Defendant had a gun and was blocking the door. Robinson told

Detective Connell that the robbers were searching for money and the pink camouflage pistol. Further, she stated that they took money from the residence.

Defendant's own statement affirmed that he and his accomplices planned to enter the Phillips residence with the intention of taking cash that the accomplices thought Phillips kept there. Petite, the accomplice acquainted with Phillips, went in first. He called Defendant and Latchie and let them in when they arrived. Defendant took a position near the door. Latchie, and possibly Petite, opened fire on the victims. Defendant took a pink camouflage pistol from the residence and fled.

In his statement to investigators, Defendant acknowledged that he concealed the pink camouflage pistol and that he wanted it. On appeal, he argues that he changed his mind about the robbery when he entered the home and saw Batiste, a man he knew. He acknowledges that he picked up the pistol before fleeing the house; however, he contends that his action was instinctive, as the sudden outbreak of gunfire "did not give him much time to think or react." He also claims that as he fled the scene and went to his sister's house, he did not realize he had the pink camouflage pistol. Under the *Jackson*/*Kennerson* standard, we find that the jury could have rationally concluded that Defendant intended to go through with a taking of some sort, and thus go through with the robbery. The pink camouflage pistol was a thing of value. Pursuant to his own admission to police, Defendant grabbed it, fled the scene with it, and stored it in a shoebox. His statements to investigators showed that he wanted possession of it. The jury could have logically concluded that Defendant's action of taking the pink camouflage pistol was not merely instinctive and that as he fled, he was fully aware that he was in possession of it. Also, Defendant's accomplices exerted force and intimidation on the victims.

In summary, this court finds that the State established the elements of the crime beyond a reasonable doubt. The evidence supports the conviction, even if

7

Defendant is viewed as having taken a relatively minor role in the crime. Further, evidence showed that Defendant took an active role in the robbery. Robinson testified that she saw Defendant in possession of a gun, although she did not see him fire it. Stelly, the firearms expert, testified that three weapons were fired at the scene.[4]

We find that this assignment of error lacks merit. Thus, Defendant's conviction is affirmed.

*Excessive Sentence Claim*

In his second assignment of error, Defendant argues that his sentence is constitutionally excessive. Defendant acknowledges that he filed no motion to reconsider his sentence. Such a motion is required to preserve sentencing claims for appellate review. La.Code Crim.P. art. 881.1. However, Defendant did object to the sentence when it was pronounced.

In *State v. Tucker*, 22-735, pp. 9–11 (La.App. 3 Cir. 5/31/23), 368 So.3d 187, 194–95, this court noted:

> Defense counsel made a general objection. However, no motion for reconsideration was filed.
>
> > In *State v. Barling*, 00-1241, 00-1591, pp. 10-11 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1041–42, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, this court addressed review of a sentence following a general objection and the failure to file a motion for reconsideration:
> >
> > > The failure to timely file a written motion to reconsider sentence or to orally urge any specific ground for reconsideration at sentencing precludes a defendant from objecting to the sentence imposed. *State v. Moore*, 98-1423 (La.App. 3 Cir. 3/3/99), 734 So.2d 706. *See also State v. King*, 95-344 (La.App. 3 Cir. 10/4/95), 663 So.2d 307, *writ denied*, 95-2664 (La. 3/15/96), 669 So.2d 433. La.Code Crim.P. art. 881.1 (emphasis added) serves as the basis for this restriction and provides, in pertinent part:

---

[4] Defendant argued that, in a recorded statement, Robinson stated that one of the male victims "shot back" at the robbers. However, the State argued that Robinson stated a male victim "fell back." A review of the recorded statement establishes that the State's assertion is correct.

A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.

(2) The motion shall be oral at the time of sentencing or in writing thereafter *and shall set forth the specific grounds on which the motion is based*.

. . . .

D. Failure to make or file a motion to reconsider sentence *or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review*.

In cases where courts have held that an oral objection alone is sufficient to preserve the issue for review, the oral objection contained the basis for the motion, such as excessiveness of sentence. *See State v. Caldwell*, 620 So.2d 859 (La.1993); *State v. Trahan*, 98-1442 (La.App. 4 Cir. 12/1/99), 752 So.2d 921. Therefore, since Defendant's oral motion did not set forth any specific grounds to support his claim of excessive sentences, we are relegated to a bare claim of excessiveness. *State v. Mims*, 619 So.2d 1059 (La.1993), *after remand*, 626 So.2d 856 (La.App. 2 Cir. 1993), *writ denied*, 93-2933 (La. 2/11/94), 634 So.2d 373.

Because defense counsel entered a general objection, this court is relegated to a bare claim of excessiveness. Thus, Defendant waived review of his claim that the trial court erred in giving any weight to an unadjudicated and dismissed charge of attempted carjacking as evidence in support of a maximum sentence.

[Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the

> imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00), 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*Barling*, at 1042–43 (alteration in original).

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501.

> *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Thus, this assignment of error is reviewed as a bare claim of excessiveness.

Pursuant to La.R.S. 14:64(B), the sentencing range for armed robbery is ten to ninety-nine years. Defendant received a seventy-five-year sentence. Assessing this sentence under Tucker, 368 So.3d 187, and the jurisprudence cited therein, we note that the trial court considered the nature of the offense and the circumstances of the offender:

> THE COURT:    . . . I have reviewed the record. Sentencing memorand[a] have been filed by Defense Counsel and by the State. Victim Impact Statements have been filed by family members of the two victims murdered during the armed robbery. I've also heard the testimony given today, including the statement made by [Defendant]. I have also reviewed the pre-sentence investigative report thoroughly for the purposes of the sentence and provided the report to Defense Counsel and State for review. . . .

> . . . .

> I will tender the pre-sentence investigative report to the Deputy Clerk for filing into this record under seal. In determining a sentence[,] the Court is required [sic], reviewed, and considered the sentencing guidelines and the sentencing factor[s] set forth in Louisiana Code of

10

Criminal Procedure Article 894.1. The guidelines mandate that when a defendant has been convicted of a felony, the Court should impose the sentence of imprisonment. Here, without doubt, this case calls for a sentence of imprisonment, and that it be significant. . . . This Court has taken notice and has weighed in its decision today, the defendant's social history and his prior criminal record. This Court has also taken notice that a dangerous weapon were [sic] used in the crime, firearms, as a crime of violence, and that the offense resulted in the shooting deaths of Hiram Phillips, Jr., Mr. Larry Batiste, both of whom leave families behind. Mr. [Tousant], whatever sentence I give you today, it does not ignore the gravely serious nature of your crime. Your active participation in the armed robbery that resulted in the death of two victims and the disfigurement and traumatization of a surviving victim. According to the evidence adduced at trial, and the findings of the jury, on January 27, 2020, you along with two others conspired to use your own words . . . to jack or steal money from Hiram Phillips, Jr. . . . You entered the residence while armed with a handgun, and placed yourself next to the front door. . . . Latchie started the armed robbery attempt by banishing [sic] his gun. While Larry Batiste begged for his life to be spared[,] Latchie shot him dead. Latchie then pointed his gun at Hiram Phillips[,] Jr.[,] and Brianna Robinson and began shooting, hitting them both. The undisputed evidence presented at trial showed that three different handguns were fired at three victims that night, and only one survived the night[,] Ms. Robinson, who was left permanently injured and disfigured with wounds in her face and arms. Moreover, she was left not only with physical trauma of her gunshot wounds, but the psychological trauma of suffering and surviving imminent death and to have her boyfriend die lying on top of her . . . as he tried to[] shield her from the spray of bullets with a dead puppy in her arms. His efforts likely saved her life. Further evidence adduced at trial showed that you stole Mr. Phillips['] pink camouflaged 9mm handgun from the house before you fled through the windows of the back bedroom. As if it were a trophy of sorts from your efforts that night. [sic] Leaving the carnage behind, you fled the home to . . . your mother's house, and then your sister's house here in town to hide the gun before fleeing the jurisdiction to another parish. On February 22, you were apprehended by the Natchitoches Police Department SWAT Team. And after being Mirandized, confessed to your role in the conspiracy to rob Hiram Phillips, Jr. and admitted he [sic] stole the pink camouflage handgun from the . . . murder scene. This Court, as any sentencing Court, is charged with the responsibility of imposing [a] sentence which is significant, but not greater than necessary to reflect the seriousness of [the] offense charged, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes committed by you. . . . Although this Court must balance notions of compassion, justice, and public safety in criminal sentencing, it must also do so against the backdrop of the facts of this case. I particularly take note of the serious nature of the crime, the resulting murders of two victims, the resulting lifelong physical and mental conditions of the lone survivor of this armed robbery, the pre-meditated and calculated nature of the crime, and by

11

no means forgotten [sic] the trauma [suffered] by [Phillips' son] . . . then 11 years old, who was left in the house alone to discover by himself the bloody carnage in his own living room, and to open the door for arriving police and first responders to display this bloody tableau. . . . No sentence I give you today can compensate him for that, nor can any sentence I give you today compensate Ms. . . . Robinson for the terror she felt of the [impending] . . . death that she miraculously abated [sic], or compensate the friends and families for the lost lives of Mr. Batiste and Mr. Phillips. I have considered your considerable criminal history. You have three . . . felony convictions to which you have been sentenced an aggregate of 14 years. I also note that you're only 25 years old. It is also noted that two of those prior convictions are crimes of violence. Thus the instant conviction raises your total to three convictions of crimes of violence. Lastly, this Court notes the following aggravating sentencing considerations in accordance with the Louisiana Code of Criminal Procedure Article 894.1. [Defendant] was offered and received something of value for the commission of these offense[s]. He did it to share the spoils of the robbery perceived by the offenders at the time to be at or about $20,000. [Defendant] knowingly created a risk of death or great bodily harm to more than one person by bringing a firearm and willingly attending a robbery knowing his co-conspirators were also armed. Actual violence was used in the commission of the offense by way of the firearms. The offense results in a significant permanent injury and significant economic loss to the victims and their families. [Defendant] used a dangerous weapon in the commission of the offense[,] and he foreseeably endangered human life by discharging a firearm during the commission of the offense which satisfies the element of armed robbery statute, the use of force or intimidation. Of the mitigating factors by the Court to consider sentencing that are outlined in Louisiana Code of Criminal Procedure Article 894.1, 2 through 31 (sic). The Court finds none applicable in this case. Not to be overlooked, the Court has also considered the sentencing memo submitted by you and your counsel. You state that you arrived at the scene, you realized that a close family friend was there, and that you no longer wished to participate in the robbery. This Court finds this hard to believe as the fact[s] of the case, believe [sic] your intentions, you were standing in front of the only functional entrance and exit to the house. Of all seven people present[,] you had the greatest and soonest opportunity to leave. Further, the evidence showed that there were three guns, three robbers, three victims. There was no evidence that the victims responded with gunfire. Therefore, each of you brought a gun to the home. The gun you brought to the home was fired, and the Court believes fired by you. You further state that you have three sons, and you're willing to participate in their lives and guide them in a way that will help them and prevent them from making the same decisions you have made. If they were that important to you, it baffles this Court that you would risk giving up, seeing them grow up by participating in an armed robbery, or most of you [sic] would somehow look up to a father who is a career felon at the age of 25. Your employment history is spotty at best, but it does not bespeak a willingness to support your children. Your pleas of lost fatherhood

fall on deaf ears, Mr. [Tousant]. You state that you have a close relationship with your mother and your siblings, and I'm very happy to hear that. For however a difficult and tragical day this is, at least you have the good fortune of having close family to support you. . . . We all make mistakes[,] and you've made a terrible one by participating in an armed robbery. You will need the family support you talk about now more than ever. . . . I hope with time and with treatment and reflection, still being a young man, there's time to learn and to hopefully to live a productive life for yourself, for your family, for your friends, and for society. . . .

It is clear that the offense was serious and that Defendant was a repeat offender with two prior convictions for crimes of violence. These *Lisotta*[5] factors weigh in favor of a serious sentence. As for the third factor, comparison to other sentences for similar crimes, Louisiana courts have affirmed seventy-five-year sentences for armed robbery convictions. *See State v. Queen*, 17-599 (La.App. 3 Cir. 1/4/18), 237 So.3d 547, *writ denied*, 18-211 (La. 11/20/18), 257 So.3d 186, *abrogated in part by State v. Sagastume*, 22-1824 (La. 12/8/23), 379 So.3d 1243; *State v. Gross*, 05-903 (La.App. 5 Cir. 3/28/06), 927 So.2d 583, *writ denied*, 06-1465 (La. 2/16/07), 949 So.2d 408; *State v. Mitchell*, 586 So.2d 701 (La.App. 3 Cir. 1991).

Defendant argues on appeal, as he did in the trial court, that his financial straits drove him to participate in the crime. He also argues that the seventy-five-year term is effectively a life sentence for him. We find that these arguments carry no weight. Even a dire financial situation does not excuse the violent acts that Defendant committed in this case. A seventy-five-year sentence is as much a life sentence for any human as it is for Defendant.

Defendant argues that the evidence that he was armed during the shootings is "highly debatable." This argument falls outside the limits of a bare constitutional analysis for excessiveness.

---

[5] *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183.

Finally, Defendant suggests that his role in the robbery was minor and that he is simply being punished for going to trial. He alleges that one accomplice, Petite, was acquitted in a separate proceeding. He states that the other accomplice, Latchie, entered into a plea arrangement and received a sentence of twenty-nine years. As with his previous assertion, this argument falls outside the parameters of a bare excessiveness claim. Further, the argument is not pertinent, as Defendant went to trial separately.

The evidence in this case supports Defendant's conviction, even if he is viewed as having taken a relatively minor role in the crime. The record shows ample evidence of Defendant's active role in the robbery. Robinson testified that she saw Defendant in possession of a gun, although she did not see him fire it. Stelly, the firearms expert, testified that three weapons were fired at the scene. Further, pursuant to *Tucker*, 368 So.3d 187, and the jurisprudence cited therein, the sentence is not constitutionally excessive.

For these reasons, we find that this assignment of error lacks merit. Consequently, Defendant's sentence is affirmed.

## V.

## CONCLUSION

For the foregoing reasons, we find no merit to any of the arguments advanced by Defendant, Jaleel J. Tousant. Accordingly, we affirm his conviction on the charge of principal to armed robbery, a violation of La.R.S. 14:24 and 14:64, and his sentence of seventy-five years at hard labor without benefit of parole, probation, or suspension of sentence.

**AFFIRMED.**

14